## No. 14,804.

PHILLIPS *v.* THE PEOPLE.
(110 P. [2d] 977)

Decided February 10, 1941.   Rehearing denied March 3, 1941.

Mr. CLARENCE O. MOORE, for plaintiff in error.

Mr. BYRON G. ROGERS, Attorney General, Mr. GERALD E. McAULIFFE, Assistant, for the people.

*In Department.*

Mr. Justice Bakke delivered the opinion of the court.

Plaintiff in error, defendant below, was found guilty of assault for shooting a fifteen year old boy and sentenced to six months in jail. Reversal is sought on a writ of error.

Upon our own motion we dismissed the case for failure to prosecute, but subsequently, on motion of plaintiff in error, it was reinstated and and we now elect to determine the matter as submitted on typewritten briefs, without staying the execution of sentence.

The parties will be designated as in the court below.

The facts briefly stated are: On the afternoon of September 16, 1939, three boys, Parsons, Aday and Schwartz, whose homes are in Golden, went up on Table Mountain near Golden on a hunting trip. Each carried a 22-caliber rifle. As they walked along they shot at various targets—birds, rabbits, etc. They entered upon the land of defendant, who apparently had seen them and was approaching with a gun in the crook of his arm. The boys stopped behind some rocks, but when defendant continued to advance, they ran and tried to hide in a wooden culvert nearby. As usual, there was a dog along and he started whining, thus revealing their whereabouts to defendant. Parsons was at the end of the culvert nearest defendant, and behind him was Aday, with Schwartz near the opposite end. Parsons testified to the following conversation with defendant: "So I have got you at last, eh? He said; 'Come on, crawl out of there.' And I went to crawl out. My gun was lying on the ground and I put my hand behind me to get up and he said, 'So pull a gun on me, will you?' and he fired. Before he fired, I said, 'Don't shoot'." Schwartz testified that defendant said: "Don't pull a gun on me or I will shoot you right through the heart."

There was no substantial conflict in the stories related by the boys.

Parsons was shot through the wrist by defendant, the bullet finally lodging in Aday's hip. The boys came out, leaving their guns in the culvert. Aday collapsed shortly after, and Schwartz had to carry him home.

The sheriff was immediately notified and he with two deputies arrested defendant. They found him on his place near the front of his truck, and seeing he had two guns with him they spread out to encircle him. At that, defendant said, "Stop right there, Sheriff, you have come far enough." As he was reaching for a gun one of the deputies overpowered him and brought him down. Both of his guns were loaded.

Defendant, urging that the shooting was in self defense, testified that just as he came in from of the culvert he saw the Parsons boy with a gun across his knees, and demanded that he drop it; that instead of dropping the gun "he swung it on me; it was then I fired this shot to try to knock this gun from his hands." As to his conduct when the sheriff arrived, he testified that he saw one of his guns that was leaning against the truck move, and he just reached for it to keep it from falling. He further testified that he kept the guns around while he worked to shoot coyotes and hawks.

The twenty-two assignments of error are argued by counsel under three points: 1. Impropriety of admission of testimony relating to defendant's conduct at the time of his arrest. 2. Same objection to testimony of a witness concerning certain X-ray pictures. 3. Refusal of the court to give certain tendered instructions.

■ 1. Defendant's first proposition is based on the supposition that his conduct at the time of his arrest amounted to the crime of resisting an officer, therefore, being a separate and independent crime, evidence concerning it was inadmissible. There is no merit in this contention. Under the circumstances defendant's conduct at the time of his arrest was a part of the res

gestae and evidence concerning it was admissible as such. *Pearson v. People,* 69 Colo. 76, 168 Pac. 655; 22 C.J.S. §628.

■ ■ 2. The X-ray pictures were first introduced in connection with the testimony of Dr. Garvin, who was thoroughly familiar with them, and no objection was interposed to his testimony or the purpose for which the pictures were exhibited. Witness Dies, who was an officer, an admitted ballistics expert, and an F.B.I. graduate followed Dr. Garvin on the witness stand and was asked the question: "Assume that the bullet in question had been discharged from that gun at about fifteen feet from the boy whose arm it penetrated and that some further distance, approximately two to six feet, it struck the side of a very hard stone wall at an angle of about forty-five degrees, or approximately that, what would be the condition of the bullet as compared to the bullet you see in the X-ray pictures?"

Objection was made that the witness was not qualified as an expert to interpret X-ray pictures. Such qualification was not necessary. Any layman would know that a lead bullet fired from a rifle and striking a stone wall would be flatened, and that was the substance of the testimony of the witness on that point. The purpose of this line of questioning had to do with the theory of the defense that the bullet had ricocheted after striking Parsons. In any event, it is wholly immaterial because defendant was only charged with the shooting of Parsons. The witness was not asked to interpret the X-ray picture, but simply to make a comparison with what he saw—and what anyone could see —and the bullet mentioned in the question. There was no possibility of prejudice to defendant in Dies' testimony.

■ ■ 3. The complaint as to the court's refusal to instruct on all degrees of murder is without merit. There was no need for the giving of such instructions in this

case. Defendant was charged with "assault to commit murder." The court's instructions covered the crime of murder, which, in cases similar to this includes all degrees. No particular degree of murder was here involved. *Dillulo v. People,* 56 Colo. 339, 138 Pac. 33. The jury was fully advised as to what verdict it could return under the law, and error, if any, was favorable to the defendant, of which he has no ground for complaint. The record discloses that he had a fair trial.

The judgment is affirmed.

MR. CHIEF JUSTICE FRANCIS E. BOUCK, MR. JUSTICE OTTO BOCK and MR. JUSTICE HILLIARD concur.