No. 23203.

JAMES EDWARD WILKINSON, ALSO KNOWN AS JAMES E. WILKINSON v. THE PEOPLE OF THE STATE OF COLORADO.
(460 P.2d 774)

Decided November 10, 1969.

GEORGE E. SMITH, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

JAMES EDWARD WILKINSON, to whom we will refer as defendant, was convicted of burglary in the district court of Pueblo, Colorado.

A drugstore in Pueblo was burglarized and from it was taken only narcotics. A few days after the burglary one Gregory Graham brought certain items into the drugstore and asked the manager about them. The items were needles for the injection of drugs, and the manager identified them as being taken from the store at the time of the burglary. These items were introduced into evidence as an exhibit.

Concerning the needles, the testimony was that defendant Wilkinson was a roomer in the Graham house, and that Mrs. Graham had found the needles on a shelf in the utility room of her home. Not knowing what they were and where they had come from, she showed them to her husband, who took them to the drugstore. Both Mr. and Mrs. Graham testified the needles did not belong to them, and that they had never used drugs. They further testified that between the time of the burglary and the time they discovered the items neither they nor their roomer, Wilkinson, had had any visitors.

The report to the police of the finding of the needles

prompted two officers to visit the Graham home. Concerning the events immediately prior to and at the time of the arrest of the defendant, the district attorney requested an *in camera* session of court wherein he submitted an offer of proof dealing with the proposed testimony of the arresting officers as to the physical acts and the appearance of the defendant. The court, after hearing the details of the offer of proof, ruled the testimony to be admissible for the purpose of showing motive or the intent to commit the burglary. After precautionary instructions to the jury by the court the arresting officers were permitted to testify.

A summary of their testimony is that when the defendant appeared at his door in response to the knock of one of the officers, he told them he could not open the storm door and that they should go to the front door. The officers complied, but the defendant did not appear. As a result, one of them — Officer Lutes — went to the rear of the house where he observed the defendant running between his room and the utility room. He also heard the defendant making loud noises. When the officers gained entrance to the house they observed the defendant in a state of agitation; that he was panting and sweating; and that his eyes appeared "pinpointed." Officer Lutes further noticed the presence of fresh blood on defendant's shirt and on one sock. Each officer advanced his opinion that the defendant was under the influence of some drug.

Further testimony of the arresting officers revealed that after the defendant was taken into custody they returned to the Graham home, and, with the consent of Mrs. Graham, searched the house with the exception of defendant's room. They testified they found a spot resembling blood in the utility room on top of a trap door leading to the basement. Upon going into the basement they found drugs (later identified as among those taken in the drugstore burglary) behind the steps below the trap door.

The defendant asserts two assignments of error to the above testimony:

I. The court erred in admitting testimony because it dealt with transactions apart from the offense with which the defendant was charged:

II. Without this testimony the People's evidence was insufficient to establish a prima facie case of burglary against the defendant.

I.

■■ The first assignment of error is without merit. The crux of defendant's argument is that the People in their offer of proof made before the judge in chambers relied on *Stull v. People*, 140 Colo. 278, 344 P.2d 455, and *Clews v. People*, 151 Colo. 219, 377 P.2d 125, and that those cases deal with evidence of similar acts or transactions. On the other hand, the case at bar involves the admission of circumstances which — the defendant argues — shows a dissimilar transaction tending to show the defendant as having committed "some sort of drug offense" which occurred one week after the principal crime. The *Stull* case does, as contended by the defendant, refer specifically to similar acts or transactions only, and in *Stull* the evidence of those acts was introduced for the limited purpose of establishing plan, scheme or design.

We do not, however, concern ourselves with the cases cited by and argued by the People before the trial court. If *Stull* was erroneously cited that does not bind us here. The trial court, although persuaded by erroneous argument, correctly admitted the evidence. Supporting the court's ruling are the cases of *Jordan v. People*, 151 Colo. 133, 376 P.2d 699, *cert. denied* 373 U.S. 944, 83 S. Ct. 1553, 10 L.Ed.2d 699, and *Wooley v. People*, 148 Colo. 392, 367 P.2d 903, both of which sanction the admission of such evidence even though pertaining to alleged criminal acts dissimilar to the principal crime for which the defendant is being tried.

■ In *Wooley* the defendant was accused of homicide. At the trial there was testimony that Wooley allegedly

forged and cashed checks payable to the homicide victim. This evidence was offered for the purpose of showing a motive for the homicide with which defendant was charged. This court in *Wooley* was called upon to distinguish such evidence from the transactions in *Stull* and noted:

"* * * [T]he *Stull* case involved 'other transactions' of a 'similar nature' which were 'wholly independent' of the offense for which the defendant was on trial. Whereas in the instant case, we are concerned with other transactions of a dissimilar nature which instead of being 'wholly independent' of the offense for which Wooley was on trial were on the contrary an integral part and parcel of the total picture surrounding the homicide.

"In the prosecution of a homicide the People are under no obligation to show a motive for the commission of the crime, but evidence tending to show the existence of such motive has long been held admissible. See 40 C.J.S. page 1151, Homicide, §227; and *Brown v. People,* 130 Colo. 77, 273, P.(2d) 128. * * *

"In 40 C.J.S. page 1154, Homicide, §227 appears the following: 'Evidence which has a direct tendency in view of surrounding circumstances to establish motive is admissible against the accused, even though it may show him guilty of crimes other than that for which he is on trial.'

"There was no error in permitting the People to introduce evidence pertaining to the cashing of the checks by Wooley. The evidence had obvious probative value in explaining the motive for this killing. In its instructions the trial court out of an abundance of caution advised the jury as to the purpose for which this evidence had been received and cautioned the jury that Wooley was on trial only for the offense charged in the information."

The principle enunciated in *Wooley* is applicable and controlling in the case at bar. The circumstance of the finding of part of the stolen items in the Graham house had already led to a suspicion that the accused was

involved in the burglary. The acts surrounding his conduct when he was arrested, indicating drug use, could be found to support the inference that he had a motive for the burglary. This made evidence of defendant's acts at the time of the arrest material and relevant to the offense with which he was charged.

██ Defendant further contends that the circumstances of his arrest are too remote to have probative value as to motive for the crime which took place one week earlier. This too is answered by *Wooley*. The cashing of the checks took place months after the killing, yet were found to be "part and parcel of the total picture surrounding the homicide."

In 1 *Wharton's Criminal Evidence* §149 (12th ed. R. Anderson) we find the following apt statement:

"* * * There is no fixed standard for determining remoteness. It is therefore necessary to consider all the circumstances of the case, the nature of the acts indicated or shown by the evidence offered, and the nature of the crime. In any case, the determination of whether evidence is too remote to be relevant is left to the discretion of the trial judge, and his decision will not be reversed in the absence of clear proof of an abuse of that discretion."

Although the evidence surrounding the arrest of the defendant was admitted for the purpose of showing motive or intent to commit the crime charged, we note that it would have been admissible on other grounds as well. Included in the testimony were facts which support the inference that defendant tried to hide the drugs in the basement. When coupled with the fact that, with the exception of the defendant, no other person other than the Grahams had access to the basement between the burglary and the discovery of the stolen narcotics, the inference that the defendant put them there is strong. The testimony is quite persuasive as showing guilty knowledge and criminal agency as well as motive for the crime. Similarly, the testimony tends to show an attempt by the defendant to dispose of specific articles

of property which were identified as belonging to the victim of the crime. And this type of evidence also has been held admissible under the aforementioned circumstances.

Thus in *Jordan, supra,* we held that evidence showing the circumstances of and the history of the arrest, and actions of the defendant in avoidance of arrest, all were properly admitted, commenting:

"It is the general rule that evidence of offenses other than the one for which the defendant is on trial is not admissible. But where the case is such that proof of one crime tends to prove any fact material in the trial of a person accused of another crime, such proof is admissible, and the fact that it may tend to prejudice the defendant in the minds of the jury is no ground for its exclusion. *Abshier v. People,* 87 Colo. 507, 289 Pac. 1081; *Phillips v. People,* 107 Colo. 250, 110 P.(2d) 977; *Williams v. People,* 114 Colo. 207, 158 P.(2d) 447, 159 A.L.R. 509.

"Jordan's conduct leading to his arrest was a circumstance properly brought to the attention of the jury, not for the purpose of showing that Jordan was guilty of other crimes, but for the purpose of determining whether such conduct tended to show or not show his consciousness of guilt. * * *"

In view of our holding on the admissibility of the challenged testimony, the second argument of the defendant is fully answered.

The judgment is affirmed.

MR. CHIEF JUSTICE McWILLIAMS, MR. JUSTICE KELLEY and MR. JUSTICE GROVES concur.