2015 COA 151

The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Robert Juan GEE, Defendant–Appellant.

Court of Appeals No. 12CA1217

Colorado Court of Appeals,
Div. I.

Announced October 22, 2015

716

Cynthia H. Coffman, Attorney General, Gabriel P. Olivares, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Borquez Law Office, Robert P. Borquez, Denver, Colorado, for Defendant–Appellant.

Opinion by JUDGE BERGER

¶ 1 Defendant, Robert Juan Gee, appeals the judgment of conviction entered on jury verdicts finding him guilty of first degree assault, first degree burglary, and aggravated robbery. He also appeals the sentence imposed and the trial court's order denying his motion for a new trial.

¶ 2 Gee contends that the trial court erred in (1) admitting evidence that he fled to Michigan while awaiting trial; (2) adjudging him a habitual criminal; (3) denying his request for an extended proportionality review of his sentence; and (4) denying his motion for a new trial. We address and reject each of these contentions and affirm.

## I. Facts and Procedural History

¶ 3 Gee's codefendant, Lamar Wilson, testified at Gee's trial that he, Gee, and Maurice

Ray went to the victim's apartment with the intent to rob him of money and drugs. According to Wilson's trial testimony, Gee and Ray had planned the robbery, and they all had guns: Gee and Ray had 9 mm handguns, and Wilson had a .22 caliber revolver.

¶ 4 Wilson testified that Gee knocked on the victim's door, the victim opened the door, and then he tried to close it again. Wilson said that Gee then fired one shot through the door, went inside, and asked where the money and "dope" were. He heard Gee say, "Do you want to die?" and then he heard several more shots. He testified that, after leaving the apartment, Gee said, "I think he's dead."

¶ 5 The victim testified that earlier that day, he had gone to the bank and cashed his paycheck for $318. That night, when he returned to his apartment complex, he saw two people behind him as he was approaching his apartment. After he opened the door to his apartment, he heard a shot.

¶ 6 The victim testified that one of the assailants wore a black coat with fur fringe and the other wore a hooded sweatshirt. They both had masks and guns. He testified that he tried to shut the door, but it would not close all the way. This was the last thing he remembered before the police came and he was taken to the hospital. He had been shot five times.

¶ 7 A woman who lived near the victim testified that she was watching television when she heard gunshots. She cracked her door open and saw three people running in the victim's apartment building. They wore black "hoodies" and white masks. She closed her door and called 911.

¶ 8 The building manager for an apartment complex adjacent to the victim's building also testified that he heard gunshots. He then saw three people come out of the front entryway of the victim's apartment complex. They were wearing dark clothing with their hoods pulled down to cover their faces and their hands were in their pockets. He saw them get into a waiting sports utility vehicle (SUV)—it was running and its lights were on—and he noticed part of its license plate number before it drove away. When the police arrived, he gave them a description of

the SUV and the partial license plate number, and he told them the direction in which the car had headed.

¶ 9 The police located the SUV and arrested the four occupants (Gee, Wilson, Ray, and the driver, Melissa Robinson). The police found a 9 mm handgun on the floor next to the front passenger seat where Gee had been sitting. Forensic testing established that it was the gun used to shoot the victim.

¶ 10 In the SUV, the police also found three masks, two dark-colored hooded sweatshirts, and a black jacket with fur fringe on the hood with Gee's wallet in the pocket. $344 was found in Wilson's pants pocket.

¶ 11 Gunshot residue (GSR) testing revealed GSR on both of Ray's hands and on his face, on Wilson's face, and on both of Gee's hands and on his face.

¶ 12 Wilson pleaded guilty to one count of aggravated robbery with a stipulated sentence of four to sixteen years' imprisonment. As part of his plea agreement, he agreed to testify at Gee's trial. Ray was tried separately and did not testify at his trial or at Gee's. He was convicted of first degree burglary and received a lengthy sentence.

¶ 13 Gee was charged with various offenses including attempted first degree murder (after deliberation). He did not testify. The jury acquitted him of attempted first degree murder but convicted him of first degree assault with a deadly weapon under section 18–3–202(1)(a), C.R.S. 2015; first degree burglary as a crime of violence under sections 18–4–202(1) and 18–1.3–406(2)(a)(I)(A), C.R.S. 2015; and aggravated robbery with a deadly weapon under section 18–4–302(1)(b), C.R.S. 2015.

¶ 14 The trial court found that all three convictions were for crimes of violence. The court also found that the prosecution had proved beyond a reasonable doubt that Gee had two prior felony convictions and sentenced him as a habitual criminal under section 18–1.3–801(1.5)(a), C.R.S. 2015. Based on these findings, the court sentenced Gee to 48 years' imprisonment for each conviction, to be served consecutively, for an aggregate term of 144 years.

¶ 15 Shortly after sentencing, Gee filed a motion for a new trial under Crim. P. 33(c) claiming newly discovered evidence. The trial court denied the motion.

## II. Evidence of Flight

¶ 16 After his arrest, Gee was released on bond. On January 12, 2011, he appeared at the preliminary hearing, which was continued to February 2.

¶ 17 Also on January 12, Robinson, Gee's girlfriend, had an interview with the district attorney and the police concerning her knowledge about the crime. She apparently provided information that incriminated Gee. Robinson's statement was given to the defense within a few weeks of the interview.

¶ 18 Gee failed to appear at the February 2 preliminary hearing, and a warrant was issued for his arrest. Four months later, Gee was located in Michigan and returned to Colorado for trial.

¶ 19 On the third day of trial, the prosecutor told the trial court that he intended to call the district attorney's office investigator to testify. The investigator had assisted in locating Gee. The prosecutor stated that the investigator's testimony would establish evidence of flight, which he asserted was admissible to show Gee's consciousness of guilt.

¶ 20 Defense counsel objected, arguing that such evidence falls under CRE 404(b) and the prosecution had not provided pretrial notice of its intent to introduce the evidence. The trial court overruled the objection, stating that evidence of Gee's flight was not CRE 404(b) evidence and that it was relevant and admissible to show Gee's mental state in fleeing the jurisdiction.

¶ 21 The investigator testified regarding Gee's failure to appear at the February 2 hearing, the issuance of the arrest warrant, and locating Gee.

¶ 22 Gee argues that the trial court erred in admitting this testimony because he contends that evidence of flight to show consciousness of guilt is admissible only under CRE 404(b), defense counsel had requested disclosure of CRE 404(b) evidence pretrial, and the prosecution did not provide timely notice of its intent to introduce the evidence. We reject this argument.

¶ 23 We review a trial court's decision to admit evidence for an abuse of discretion. *People v. Perry*, 68 P.3d 472, 475 (Colo.App. 2002). A trial court abuses its discretion if its decision was manifestly arbitrary, unreasonable, or unfair, or if it misconstrued or misapplied the law. *People v. Pollard*, 2013 COA 31M, ¶ 10, 307 P.3d 1124.

¶ 24 CRE 404(b) prohibits the admission of "[e]vidence of other crimes, wrongs, or acts ... to prove the character of a person in order to show that he acted in conformity therewith." Such evidence may be admissible for other purposes "provided that upon request by the accused, the prosecution in a criminal case ... provide[s] reasonable notice in advance of trial ... of the general nature of any such evidence it intends to introduce at trial." *Id.*

¶ 25 Gee argues that evidence that he fled to Michigan constituted evidence that he violated section 18-8-212(1), C.R.S.2015, which provides that a knowing violation of bail bond conditions or a knowing failure to appear for trial or other proceedings is a class 6 felony. Gee contends that because this evidence constituted evidence of other crimes, it was subject to CRE 404(b).

¶ 26 "Evidence of a defendant's flight may be relevant to show consciousness of guilt...." *Perry*, 68 P.3d at 475. In this context, flight means that "after the charged crime the accused acted in ways apparently calculated to avoid detection, arrest, prosecution, or conviction." 1 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 4:4 (4th ed. 2015). Evidence of flight may be relevant in a criminal trial because it suggests a guilty mind, and "[f]rom a guilty mind, guilt itself may be inferred." *People v. Summitt*, 132 P.3d 320, 324 (Colo.2006); *see also Wilkinson v. People*, 170 Colo. 336, 341–42, 460 P.2d 774, 777 (1969). This evidence renders the fact to be proved—that the defendant committed the charged offense—more probable than it would be without such evidence. *See Summitt*, 132 P.3d at 324 (citing CRE 401). Thus, evidence of Gee's flight was relevant under CRE 401.

¶ 27 CRE 404(b) generally governs evidence of a defendant's other crimes or bad acts that are extrinsic to the events charged. *See People v. Cooper*, 950 P.2d 620, 624 (Colo. App.1997), *rev'd on other grounds*, 973 P.2d 1234 (Colo.1999). However, "when some offenses committed in a single criminal episode become 'other acts' because the defendant is indicted [or charged] for less than all of his actions," CRE 404(b) is inapplicable. *People v. Quintana*, 882 P.2d 1366, 1372 (Colo.1994) (internal quotation marks omitted). Rather, such evidence constitutes the res gestae of the charged offense. *See People v. Martinez*, 24 P.3d 629, 633 (Colo.App.2000). Res gestae evidence is not subject to CRE 404(b), which may exclude evidence of prior or subsequent wrongdoing. *People v. Medina*, 51 P.3d 1006, 1012 (Colo.App.2001), *aff'd*, 71 P.3d 973 (Colo.2003); *see also People v. Czemerynski*, 786 P.2d 1100, 1109 (Colo.1990) (admissibility of res gestae evidence).

¶ 28 Res gestae evidence is "[e]vidence of other offenses or acts that is not extrinsic to the offense charged, but rather, is part of the criminal episode or transaction with which the defendant is charged." *Quintana*, 882 P.2d at 1373. It is "linked in time and circumstances with the charged crime, forms an integral and natural part of an account of a crime, or is necessary to complete the story of the crime for the jury." *People v. Miranda*, 2014 COA 102, ¶ 47, —— P.3d —— (internal quotation marks omitted) (*cert. granted on other grounds* Aug. 31, 2015). Thus, while "CRE 404(b) evidence is independent from the charged offense, *res gestae* evidence is linked to the offense." *Quintana*, 882 P.2d at 1373 n. 12.

¶ 29 A division of this court has concluded that the res gestae of an offense includes "[e]vidence of a defendant's behavior, including threats against witnesses or nonwitnesses, [that] may be admissible to show that the defendant was conscious of guilt and, by further inference, committed the crime charged." *People v. Kyle*, 111 P.3d 491, 499 (Colo.App.2004). Similarly, the supreme court in *Wilkinson*, 170 Colo. at 341–42, 460 P.2d at 777, stated that circumstances of a defendant's arrest or actions in avoidance of arrest that tend to show "guilty knowledge"

are "part and parcel of the total picture surrounding the [offense]." (Internal quotation marks omitted.)

> It is the general rule that evidence of offenses other than the one for which the defendant is on trial is not admissible. But where the case is such that proof of one crime tends to prove any fact material in the trial of a person accused of another crime, such proof is admissible.... [The defendant's] conduct leading to his arrest was a circumstance properly brought to the attention of the jury ... for the purpose of determining whether such conduct tended to show or not show his consciousness of guilt.

*Id.* at 342, 460 P.2d at 777 (citations and internal quotation marks omitted).

¶ 30 Colorado cases addressing evidence of flight have analyzed the issue under principles of relevancy, but they have not directly held that such evidence is not subject to CRE 404(b). Based on the principles discussed above, we now hold that evidence of Gee's flight was integrally linked to the criminal transaction for which he was charged, constituted res gestae evidence, and was not subject to the requirements of CRE 404(b). *See Quintana*, 882 P.2d at 1373.

¶ 31 Gee cites *Medina*, 51 P.3d at 1012–13, and *People v. Fernandez*, 687 P.2d 502, 504–05 (Colo.App.1984), for the proposition that consciousness of guilt evidence that indicates that the defendant has committed a separate and distinct criminal act must be evaluated under CRE 404(b). *Fernandez*, 687 P.2d at 504–05, held that the People failed to establish that evidence that the defendant made a death threat to one of the witnesses before trial was relevant because the witness against whom the threat was made had testified or was about to testify against the defendant on an unrelated crime, and thus the threat may have been prompted by that testimony. Therefore, regardless of whether the evidence was CRE 404(b) evidence or res gestae, it would not have been admissible because CRE 402 precludes the admission of irrelevant evidence.

¶ 32 In *Medina*, 51 P.3d at 1012–13, a division of this court concluded that evidence

that the defendant threatened a witness more than two years after the crime occurred could not be admitted as res gestae but was admissible under CRE 404(b) to show consciousness of guilt. In so concluding, the division emphasized that res gestae evidence must be contemporaneous with the charged offense. *Id.* at 1012. However, although one line of cases from this court, as demonstrated by *Medina*, holds that only evidence that is contemporaneous with the crime charged is res gestae, another line of cases holds that "evidence admissible as part of the *res gestae* ... includes not just evidence of other acts that were substantially simultaneous in time and circumstance with the crime charged." *People v. Agado*, 964 P.2d 565, 569 (Colo.App.1998) (Briggs, J., specially concurring); *see also Miranda*, ¶¶ 51–55; *People v. Thomeczek*, 284 P.3d 110, 115 (Colo.App.2011); *People v. Gladney*, 250 P.3d 762, 768 (Colo.App.2010); *People v. Fears*, 962 P.2d 272, 280 (Colo.App.1997).

¶ 33 Under this second line of cases, an act "somewhat remote in time" from the charged crime nevertheless is res gestae if the two are "inextricably intertwined" such that the former "forms an integral and natural part of an account of the crime." *Fears*, 962 P.2d at 280 (internal quotation marks omitted). Applying this definition, the evidence of flight was admissible as res gestae.

¶ 34 There is a persuasive argument that evidence of flight is neither CRE 404(b) evidence nor res gestae; rather, such evidence is directly relevant to the charged offense as tending to show consciousness of guilt. *See, e.g., Howard v. State*, 417 So.2d 599, 602 (Ala.Crim.App.1982); *People v. Hall*, 199 Cal. 451, 249 P. 859, 862 (1926) (Evidence of flight "is admissible, not as part of the res gestae, but as indicative of a guilty mind."). "*Res gestae* is a theory of relevance which recognizes that certain evidence is relevant because of its unique relationship to the charged crime," and thus, "where ... evidence is admissible under general rules of relevancy," there is "no need to consider an alternative theory of relevance, such as *res gestae*." *People v. Greenlee*, 200 P.3d 363, 368 (Colo.2009).

¶ 35 However, as we read the relevant cases from the Colorado Supreme Court, evidence indicating that a defendant committed an uncharged crime is either CRE 404(b) or res gestae evidence. *See People v. Rollins*, 892 P.2d 866, 872–73 (Colo.1995); *Quintana*, 882 P.2d at 1372–73; *Czemerynski*, 786 P.2d at 1109; *Callis v. People*, 692 P.2d 1045, 1050 n. 9 (Colo.1984). For the reasons discussed above, we conclude that the flight evidence in this case is res gestae.

¶ 36 Accordingly, the trial court did not err in admitting evidence of Gee's flight to Michigan.

## III. Sentencing Issues

### A. Relevant Facts

¶ 37 Gee was convicted of three class 3 felonies. § 18–3–202(2)(b) (first degree assault); § 18–4–202(2) (first degree burglary); § 18–4–302(3) (aggravated robbery). The presumptive sentencing range for a class 3 felony is four to twelve years' imprisonment. § 18–1.3–401(1)(a)(V)(A), C.R.S.2015. All three crimes also constituted crimes of violence. Gee's first degree assault and aggravated robbery convictions were per se crimes of violence. § 18–3–202(2)(c) (first degree assault); § 18–4–302(4) (aggravated robbery); *People v. Hunsaker*, 2013 COA 5, ¶ 42, *aff'd*, 2015 CO 46, 351 P.3d 388. Regarding Gee's first degree burglary conviction, the jury specifically found that the prosecution had proven a crime of violence under section 18–1.3–406(2).

¶ 38 The legislature has deemed crimes of violence "extraordinary risk" crimes, and "for such crimes which constitute class 3 felonies, the maximum sentence in the presumptive range shall be increased by four years." § 18–1.3–401(10)(a), (b)(XII). Accordingly, the maximum sentence in the presumptive range for each of Gee's three convictions was sixteen years.

¶ 39 Gee was also charged with two habitual criminal counts. At the habitual criminal proceeding, the prosecution introduced evidence that in March 2001, Gee pleaded guilty to possession of a schedule II controlled substance, a class 4 felony at the time. The prosecution also introduced evidence that in

June 2005, Gee pleaded guilty to conspiracy to distribute a schedule II controlled substance, a class 3 felony at the time.

¶ 40 The trial court adjudged Gee a habitual criminal and sentenced him under section 18–1.3–801(1.5), which provides:

> [E]very person convicted in this state of any class 1, 2, 3, 4, or 5 felony . . . who, within ten years of the date of the commission of the said offense, has been twice previously convicted . . . of a felony . . . shall be adjudged an habitual criminal and shall be punished . . . by imprisonment in the department of corrections for a term of *three times the maximum of the presumptive range* pursuant to section 18–1.3–401 for the class or level of felony of which such person is convicted. . . .

(Emphasis added.) Accordingly, the trial court sentenced Gee to forty-eight years' imprisonment for each offense.

¶ 41 Because all three convictions were for crimes of violence, the trial court also imposed consecutive sentences under section 18–1.3–406(1)(a), which provides that "[a] person convicted of two or more separate crimes of violence arising out of the same incident shall be sentenced for such crimes so that sentences are served consecutively rather than concurrently."

### B. Habitual Criminal Finding

¶ 42 Gee argues that the trial court erroneously found that the conspiracy conviction qualified as a predicate offense for the habitual criminal sentence because, even though he was an adult when he was convicted, he was a juvenile for most of the date range charged. (Gee was born on October 6, 1982, and the date range charged was between and including September 1, 1997, and May 10, 2002.) Gee contends that under the rationale of United States Supreme Court precedents, particularly *Graham v. Florida,* 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution prohibits the de facto life without parole sentence imposed because it was based on actions taken by Gee when he was a juvenile. (We understand Gee to contend that a de facto life without parole sentence is

a term-of-years sentence with a parole eligibility date that falls outside the offender's natural life expectancy.) We reject Gee's argument.

¶ 43 We agree with the People that Gee did not preserve this contention of error. At Gee's sentencing hearing, as part of an argument not renewed on appeal, defense counsel maintained that Gee committed the acts underlying the conspiracy in 1997, before he was eighteen, but the prosecution delayed prosecution until 2002. Counsel cited *Bostelman v. People,* 162 P.3d 686, 692 (Colo.2007), which held that a juvenile's age at the time of the offense, not his or her age when the charge is filed, controls whether a juvenile may be charged as an adult under the direct filing statute. Based on *Bostelman,* counsel argued that the trial court should consider the date of the offense, not the date of conviction, when applying the habitual criminal statute. Because 1997 was more than ten years before the offenses were committed in this case, counsel contended that the conspiracy conviction should not qualify as a predicate offense for habitual criminal sentencing purposes.

¶ 44 The trial court concluded that the plain language of the habitual criminal statute foreclosed this argument because it addresses "convictions" entered within ten years of the charged offense. The court found that Gee pleaded guilty to the conspiracy charge when he was twenty-three years old and noted that he was twenty at the end of the date range charged. The court thus determined that the conspiracy conviction qualified as a predicate offense.

¶ 45 To preserve an argument for appeal, "the trial court must be presented with an adequate opportunity to make findings of fact and conclusions of law on [the] issue." *People v. Melendez,* 102 P.3d 315, 322 (Colo.2004). If an objection or request was made in the trial court on grounds different from those raised on appeal, the issue is unpreserved. *People v. Ujaama,* 2012 COA 36, ¶ 37, 302 P.3d 296.

¶ 46 The argument made in the trial court did not present the court with an opportunity to rule on the argument Gee makes on ap-

peal: an Eighth Amendment challenge based on the imposition of a de facto sentence of life without parole. Gee thus did not preserve this argument, and we review for plain error. *See id.*

¶ 47 "Plain error must be both obvious and substantial, and we will not vacate a sentence for plain error unless the error so undermined the fundamental fairness of the sentencing proceeding as to cast serious doubt on the reliability of the sentence." *People v. Alvarado,* 284 P.3d 99, 103 (Colo. App.2011) (internal quotation marks omitted). We conclude that the trial court's determination that the conspiracy conviction qualified as a predicate conviction was not error, much less plain error.

¶ 48 In *Graham,* 560 U.S. at 68, 130 S.Ct. 2011, the Court explained that juveniles are less deserving than adults of the most severe punishment because they are less culpable. The Court classified sentences of life without parole as "the second most severe penalty permitted by law," stating that they deny a juvenile offender the chance to demonstrate rehabilitation and "any chance to later demonstrate that he is fit to rejoin society based *solely* on a ... crime that he committed while he was a child in the eyes of the law." *Id.* at 69, 79, 130 S.Ct. 2011 (emphasis added) (internal quotation marks omitted). For these reasons and others, the Court held that the Eighth Amendment forbids sentencing a juvenile (an individual under eighteen) to life without parole for a nonhomicide offense. *Id.* at 74, 130 S.Ct. 2011.

¶ 49 A division of this court applied *Graham* to a juvenile nonhomicide offender's sentence for a term of years that was, as here, the functional equivalent of a life sentence without parole. *People v. Rainer,* 2013 COA 51, ¶ 66, ―― P.3d ―― (*cert. granted* Dec. 22, 2014). The division held that *Graham* applies "to a sentence that denies a juvenile offender any meaningful opportunity for release within his or her life expectancy." *Id.* at ¶ 73.

¶ 50 However, Gee's sentence was not based on acts that he committed solely as a juvenile; rather, it was also based on acts he committed while he was an adult. "Con-spiracy is a continuing course of conduct which terminates when the crime or crimes which are its object are committed or the agreement that they be committed is abandoned by the defendant and by those with whom he conspired." § 18–2–204(1), C.R.S. 2015.

¶ 51 Gee turned eighteen in October of 2000. The indictment charging Gee alleged that he conspired to distribute a controlled substance from 1997 until 2002. Significantly, the indictment also alleged specific acts involving selling and distributing a controlled substance that Gee committed *after* his eighteenth birthday. By pleading guilty, Gee admitted these allegations, including that he committed the discrete acts alleged in the indictment. *See United States v. Broce,* 488 U.S. 563, 570, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989).

¶ 52 Gee's conspiracy conviction was therefore an adult conviction for acts committed by Gee when he was an adult. Thus, we need not, and do not, address whether the rationale of *Graham* and *Rainer* would apply when a conviction constituting a predicate offense for a habitual criminal sentence is based solely on crimes committed by a defendant when he or she was a juvenile.

¶ 53 Accordingly, we reject Gee's argument that the trial court erred in sentencing him as a habitual criminal.

## C. Proportionality Review

¶ 54 Gee filed a presentence motion requesting that the trial court conduct an extended proportionality review. The court conducted an abbreviated proportionality review, concluding that all five crimes—the three triggering offenses and the two predicate offenses—that formed the basis of his habitual criminal sentence were grave and serious. The court thus did not conduct an extended proportionality review.

¶ 55 Gee now argues that the court erred in denying his request for an extended proportionality review. We disagree.

¶ 56 We review de novo a trial court's proportionality determinations. *People v. Gaskins,* 923 P.2d 292, 294 (Colo.App. 1996).

¶ 57 The Eighth Amendment prohibits "cruel and unusual punishments," which the United States Supreme Court has interpreted to include sentences that are grossly disproportionate to the severity of the crimes committed. *See People v. Mershon*, 874 P.2d 1025, 1030 (Colo.1994). No sentence is per se constitutional. *Id.* Thus, upon request, a trial court must conduct an abbreviated proportionality review of a defendant's sentence. *People v. McNeely*, 68 P.3d 540, 544 (Colo.App.2002). "A proportionality review measures the relationship between the nature and number of offenses committed and the severity of the punishment inflicted upon the offender." *Mershon*, 874 P.2d at 1030.

¶ 58 When conducting an abbreviated proportionality review of a habitual criminal sentence, a reviewing court scrutinizes the offenses in question to determine "whether in combination they are so lacking in gravity or seriousness so as to suggest that the sentence is grossly disproportionate." *People v. Deroulet*, 48 P.3d 520, 524–25 (Colo.2002) (internal quotation marks omitted). "Only when an abbreviated proportionality review gives rise to an inference of gross disproportionality does a reviewing court need to engage in an extended proportionality review," which involves comparing the sentence to sentences imposed for the same crimes in the same jurisdiction and other jurisdictions. *Id.*

¶ 59 The Colorado Supreme Court has designated certain offenses as per se grave or serious, which means that they are grave or serious "by their very nature." *People v. Gaskins*, 825 P.2d 30, 37 (Colo. 1992). If an offense is per se grave or serious, a reviewing court does not examine the facts and circumstances underlying the offense; rather, the court assumes the gravity of the offense and proceeds directly to considering the harshness of the sentence. *People v. Hargrove*, 2013 COA 165, ¶ 12, 338 P.3d 413.

¶ 60 Aggravated robbery and burglary are per se grave or serious because, by their nature, they "involve violence or potential for violence." *Gaskins*, 825 P.2d at 37. Similarly, the "[s]ale of narcotic drugs is viewed with great seriousness because of the grave societal harm caused by [the] sale of illegal drugs and the evils associated with their use." *Id.* No Colorado case has specifically held that first degree assault is per se grave or serious, but several cases have concluded or implied that it is a serious offense. *See Mershon*, 874 P.2d at 1033–34; *People v. Hayes*, 923 P.2d 221, 230 (Colo.App.1995); *People v. Penrod*, 892 P.2d 383, 387 (Colo. App.1994). Because, by its nature, first degree assault involves violence or the potential for violence, we hold that it is a per se grave or serious offense.

¶ 61 Gee does not dispute that his convictions for aggravated robbery, burglary, narcotics distribution, and first degree assault were for grave or serious offenses. He also concedes that current supreme court precedent holds that narcotics-related offenses are per se grave or serious. *See, e.g., Deroulet*, 48 P.3d at 524.

¶ 62 Nevertheless, Gee argues that because Colorado's public policy regarding narcotics possession (as evinced by legislative amendments) has changed in recent years, whether a conviction for possession of a controlled substance is per se grave or serious or may support a habitual criminal sentence is no longer clear. He thus contends that, in determining whether his possession conviction was grave or serious, we should follow other divisions of this court that have considered subsequent legislative changes reducing the classification and sentence for possession. *See, e.g., Hargrove*, ¶¶ 19–20; *People v. Anaya*, 894 P.2d 28, 32–33 (Colo.App.1994); *Penrod*, 892 P.2d at 387–88.[1]

¶ 63 However, we need not decide whether it is appropriate to do so, or even whether Gee's possession conviction was grave or serious, because even were we to assume that it was not grave or serious, we would conclude

---

1. The supreme court has granted certiorari to decide "[w]hether a court, when conducting an abbreviated proportionality review of a habitual criminal sentence, can consider the general assembly's subsequent reclassification of a crime." *Rutter v. People*, No. 13SC523, 2014 WL 1046156 (Colo. Mar. 17, 2014) (unpublished order).

that his sentence was not unconstitutionality disproportionate.

¶ 64 For proportionality review purposes, at least outside of the juvenile offender context, "[w]here the crime of violence statute requires the imposition of consecutive sentences, a reviewing court must conduct an abbreviated proportionality review of each separate sentence and cannot consider the total cumulative sentence." *Deroulet*, 48 P.3d at 525 n. 6. Thus, "each consecutive sentence must be considered separately." *Id.* at 524. Additionally, under the habitual criminal statute, the gravity or seriousness of the predicate crimes must be considered together with the triggering crime when conducting an abbreviated proportionality review. *Id.* at 525.

¶ 65 Each of Gee's forty-eight-year sentences was supported by at least two convictions for grave or serious crimes (the triggering conviction and the conspiracy to distribute conviction) and a third felony conviction (the possession conviction). We conclude that considering the three offenses supporting each sentence together, they are not so lacking in gravity or seriousness so as to raise an inference that the forty-eight year sentences are grossly disproportionate.

¶ 66 Because none of the imposed sentences raise an inference of gross disproportionality, the trial court did not err in denying Gee's request for an extended proportionality review.

## IV. Motion for a New Trial

¶ 67 After sentencing, Gee moved for a new trial under Crim. P. 33(c) based on newly discovered evidence. As grounds, Gee stated that both Wilson and Ray had recently made statements that exculpated him.

¶ 68 In an affidavit submitted with the motion, Ray stated that Wilson had planned the crime without Gee's involvement and Wilson had shot the victim while Ray was present. Ray stated that Gee never got out of the vehicle and was not involved in the shooting.

¶ 69 In another affidavit, Gee's investigator, who had interviewed Wilson, stated that Wilson said that he was pressured by the district attorney to implicate Gee to satisfy his plea agreement. According to the investigator, Wilson said that he was outside of the victim's apartment when the shooting occurred and could not see into the apartment, or any of the individuals involved, and thus he did not actually see Gee shoot the victim.

¶ 70 The trial court denied the motion without a hearing. The court's primary basis for concluding that neither Ray's nor Wilson's statements provided a sufficient basis for a new trial was that, even if it assumed that the statements constituted newly discovered evidence, they probably would not produce an acquittal on retrial.

¶ 71 The court explained that Wilson's new statement was only partially (if at all) at odds with his prior testimony; as he had not explicitly testified that he had seen the shooting, nor was he asked at trial about his vantage point. Regarding Ray's statement, the court explained that his recounting of the crime was implausible. It was inconsistent with the testimony of the two neighbors who had observed three individuals and with the physical evidence: GSR was found on Gee's face and hands, and the gun used to shoot the victim was found near where he was sitting in the vehicle used to flee the crime scene.

¶ 72 Crim. P. 33(c) provides that the trial court "may grant a defendant a new trial if required in the interests of justice." We review a trial court's decision whether to grant a new trial for an abuse of discretion. *People v. Munsey*, 232 P.3d 113, 120 (Colo. App.2009).

¶ 73 To succeed on a motion for a new trial based on newly discovered evidence, a defendant must show that the evidence was discovered after the trial; that the defendant and defense counsel exercised diligence to discover all possible evidence favorable to the defendant prior to and during the trial; that the newly discovered evidence is material to the issues involved, and not merely cumulative or impeaching; and that that the newly discovered evidence is of such character as probably to bring about an ac-

quittal if presented at another trial. *People v. Gutierrez*, 622 P.2d 547, 559–60 (Colo. 1981); *People v. Muniz*, 928 P.2d 1352, 1357 (Colo.App.1996).

¶ 74 For two reasons, we conclude that the trial court did not abuse its discretion in denying Gee's motion for a new trial.

¶ 75 First, Ray's and Wilson's statements did not constitute "newly discovered" evidence. "The fact that [a codefendant's] testimony was not available to [a] defendant at trial because [the codefendant] was unwilling to testify prior to his own trial does not make his testimony newly discovered." *Gutierrez*, 622 P.2d at 560 n. 12.

¶ 76 For instance, in *People v. Gallegos*, 187 Colo. 6, 8, 528 P.2d 229, 230 (1974), the defendant filed a motion for a new trial, alleging that a new witness's testimony would establish that the defendant was innocent. The defendant explained that the witness (his codefendant) had been unavailable to testify at his trial because the codefendant was facing criminal charges arising out of the same transaction for which the defendant was charged. *Id.* Following the defendant's conviction, his codefendant pleaded guilty and signed an affidavit stating that he had committed the crime by himself. *Id.* at 9–10, 528 P.2d at 231. The supreme court concluded that "it cannot be said that [the codefendant was] either a 'new witness' or that his testimony [was] newly discovered. Clearly, evidence within the defendant's knowledge before trial does not constitute newly discovered knowledge." *Id.* at 10, 528 P.2d at 231.[2]

¶ 77 Gee argues that he had no indication before or during trial that Wilson and Ray would provide the postconviction statements that they did, and thus he did not know the substance of those statements.

But if, as here, "a defendant knew or should have known, that his codefendant could offer material testimony as to the defendant's role in the charged crime," it cannot be true that the defendant was unaware of the codefendant's potential ability to exculpate him. *United States v. Owen*, 500 F.3d 83, 91 (2d Cir.2007). If the statements Ray made in his affidavit are true, then Gee, who clearly was aware that he did not participate in the crime, knew that Ray could have attested to his lack of participation. *See id.* He thus could not have been unaware of the substance of Ray's statements.

¶ 78 Likewise, in *Gutierrez*, 622 P.2d at 551, the defendant filed a motion for a new trial on the grounds that his codefendant had made new statements that the defendant had not participated in committing the crimes. The supreme court explained that if the statements were true, "this information was available to the defendant prior to trial." *Id.* at 560.

¶ 79 But even if we assume that Ray's and Wilson's statements constituted "newly discovered" evidence, the trial court's determination that the evidence probably would not have resulted in an acquittal is supported by the record. In addition to the evidence the trial court discussed in its order, the police found in the SUV three masks and a jacket, with Gee's wallet in it, matching the victim's description of what one of the assailants was wearing. Thus, a substantial amount of evidence established Gee's participation in the crime, and the trial court's determination that the "newly discovered" evidence probably would not result in an acquittal on retrial was not an abuse of discretion.

---

2. A majority of federal circuit courts of appeals have reached the same or a similar conclusion, holding that "when a defendant is aware that his codefendant could provide exculpatory testimony but is unable to obtain that testimony because the codefendant invokes his privilege against self-incrimination prior to and during the trial, the codefendant's postconviction statement exculpating the defendant is not 'newly discovered evidence.'" *United States v. Owen*, 500 F.3d 83, 88 (2d Cir.2007); *see also United States v. Jasin*, 280 F.3d 355, 364–65 (3d Cir.2002) (collecting cases).

Rather, if the defendant was aware of the substance of the codefendant's postconviction statements, the evidence is not newly discovered; it is merely "newly available" because the codefendant is newly willing to testify. *Jasin*, 280 F.3d at 368–69; *but see United States v. Montilla-Rivera*, 115 F.3d 1060, 1066 (1st Cir.1997) (expressing the minority view that "newly discovered" evidence includes evidence that was unavailable to the defendant at the time of trial due to assertions of privilege).

## V. Conclusion

¶ 80 The judgment of conviction, sentence, and order denying Gee's motion for a new trial are affirmed.

JUDGE TAUBMAN and JUDGE HAWTHORNE concur.