The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
May 17, 2018

## 2018COA68

## No. 16CA0835, People v. Wagner — Constitutional Law — Fifth Amendment — Double Jeopardy; Crimes — Stalking

A division of the court of appeals considers whether the

Double Jeopardy Clauses of the United States and Colorado

Constitutions require that a defendant's three stalking convictions

merge.  Considering the plain language of section 18-3-602(1)(a),

(b), and (c), C.R.S. 2017, the division concludes that the stalking

statute sets forth alternative ways of committing the same offense.

Because the defendant was convicted of three counts of stalking

(one under each subsection of section 18-3-602(1)) based on one

factually inseparable course of conduct, the division concludes that

the convictions were multiplicitous.  Thus, the division vacates two

of the defendant's stalking convictions and remands for correction

of the mittimus.  The judgment is otherwise affirmed.

The division also considers and rejects the defendant's contentions that insufficient evidence supported his convictions and that the trial court erred in rejecting a defense-tendered unanimity jury instruction.

COLORADO COURT OF APPEALS                                    **2018COA68**

Court of Appeals No. 16CA0835
Arapahoe County District Court No. 14CR2454
Honorable Michelle A. Amico, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Ryan Austin Wagner,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART, VACATED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE TAUBMAN
Harris and Rothenberg*, JJ., concur

Announced May 17, 2018

Cynthia H. Coffman, Attorney General, Kevin E. McReynolds, Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Joseph Paul Hough,
Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

¶ 1    Defendant, Ryan Austin Wagner, appeals his judgment of conviction entered on a jury verdict finding him guilty of three counts of stalking.  We remand for the trial court to merge his stalking convictions and correct the mittimus accordingly, but affirm in all other respects.

## I.  Background

¶ 2    In May 2014, Wagner and the victim, his wife, separated.  The victim moved in with another man she had been dating.  For the next several months, Wagner repeatedly texted, called, and followed the victim and her boyfriend.

¶ 3    Wagner and the victim were divorced in September 2014. Shortly after the divorce was finalized, the victim disclosed Wagner's behavior to her supervisor after he made several calls to her workplace.  After the victim reported his behavior, Wagner was arrested and charged with three counts of stalking — one count under each of subsections (a), (b), and (c) of section 18-3-602(1), C.R.S. 2017.  A jury returned a guilty verdict on all counts.[1]

---

[1] Wagner was also charged with violation of a mandatory protection order imposed after his arrest on the stalking charges.  He pleaded

¶ 4    Wagner was sentenced to ninety days in jail on each count with all jail terms to run consecutively, and six years of probation on each count with all probation terms to run concurrently.

¶ 5    On appeal, Wagner argues that the trial court erred by (1) entering convictions unsupported by sufficient evidence and (2) rejecting a defense-tendered unanimity instruction or, in the alternative, failing to require the prosecution to elect which acts constituted credible threats. In their answer brief, the People conceded that two of Wagner's convictions — those charged under the credible threat subsections (a) and (b) — should have merged at sentencing.

¶ 6    After considering the People's concession, we requested supplemental briefing from Wagner and the People addressing whether all three of the stalking convictions should have merged at sentencing. Wagner asserted that, assuming his convictions were not vacated altogether, merger was appropriate. The People argued that the credible threat convictions should not merge with the serious emotional distress conviction under section 18-3-602(1)(c).

guilty to this charge at the close of his jury trial. Wagner does not challenge this conviction on appeal.

2

¶ 7      We conclude that Wagner's stalking convictions should have merged and therefore remand so that the trial court can vacate two of the counts.  However, we reject Wagner's other contentions of error and therefore affirm in all other respects.

## II.  Multiplicity

¶ 8      Although Wagner did not raise the issue before the trial court or on appeal, the People conceded in their answer brief that two of his stalking convictions should have merged at sentencing and we agree.   We further conclude that Wagner's three stalking convictions should have merged and therefore remand for the trial court to vacate two of the convictions.

### A.  Standard of Review

¶ 9      We review de novo whether merger applies to criminal offenses.  *People v. Zweygardt*, 2012 COA 119, ¶ 40, 298 P.3d 1018. An unpreserved double jeopardy claim is reviewable for plain error. *Reyna-Abarca v. People*, 2017 CO 15, ¶¶ 45-46, 390 P.3d 816, 823. Plain errors are errors that are "obvious and substantial," *Hagos v. People*, 2012 CO 63, ¶ 14, 288 P.3d 116, 120, and "cast serious doubt on the reliability of the judgment of conviction," *id.* (quoting *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005)).

### B. Applicable Law

#### 1. Stalking Statute

¶ 10    A person commits stalking if he or she knowingly

> (a) Makes a credible threat to another person and, in connection with the threat, repeatedly follows, approaches, contacts, or places under surveillance that person . . . ; or
>
> (b) Makes a credible threat to another person and, in connection with the threat, repeatedly makes any form of communication with that person . . . ; or
>
> (c) Repeatedly follows, approaches, contacts, places under surveillance, or makes any form of communication with another person, a member of that person's immediate family, or someone with whom that person has or has had a continuing relationship in a manner that would cause a reasonable person to suffer serious emotional distress and does cause that person, a member of that person's immediate family, or someone with whom that person has or has had a continuing relationship to suffer serious emotional distress.

§ 18-3-602(1)(a)-(c).

#### 2. Merger

¶ 11    Unless a statute expressly authorizes multiple punishments for the same criminal offense, the Double Jeopardy Clauses of the United States and Colorado Constitutions prohibit "the imposition

of multiple punishments for the same criminal conduct." *Woellhaf v. People*, 105 P.3d 209, 214 (Colo. 2005); *see* U.S. Const. amends. V, XIV; Colo. Const. art. II, § 18. Multiplicitous charging creates a risk that a defendant "would be punished more than once for the same offense." *Quintano v. People*, 105 P.3d 585, 589 (Colo. 2005).

¶ 12 When a statute provides alternative ways of committing a single criminal offense, multiplicity concerns may materialize. *Woellhaf*, 105 P.3d at 214. "Such an issue may arise if imprecise statutory language leads a prosecutor to charge multiple counts of the same offense because a defendant has committed the crime using more than one of the prohibited alternative methods." *Id.* at 215. In these cases, courts must determine "the legislatively prescribed unit of prosecution." *Id.* at 211.

¶ 13 "After determining the unit of prosecution designated by the General Assembly, double jeopardy analysis requires us to consider whether the defendant's conduct constitutes factually distinct offenses, that is, whether the conduct satisfies more than one defined unit of prosecution." *Id.* at 218-19. In determining whether offenses are factually distinct, we consider factors including the time and location of the events, the defendant's intent, and whether

5

the People presented the acts as legally separable. *See Quintano*,
105 P.3d at 591-92. However, no one factor is dispositive and the
inquiry ultimately focuses on "all the evidence introduced at trial to
determine whether the evidence on which the jury relied for
conviction was sufficient to support distinct and separate offenses."
*Id.* at 592.

¶ 14    In the event that a defendant is convicted of multiplicitous
counts, the proper remedy is to merge the multiplicitous
convictions. *See People v. Rhea*, 2014 COA 60, ¶¶ 16-17, 349 P.3d
280, 287-88 ("Merger has the same effect as vacating one of the
multiplicitous sentences.").

### C. Analysis

¶ 15    Wagner was charged with two counts of stalking under the
"credible threat" subsections of the stalking statute, section 18-3-
602(1)(a) and (b), and one count of stalking under the "serious
emotional distress" subsection of the stalking statute, section 18-3-
602(1)(c). The complaint and information lists the same period for
all three alleged offenses, May 15, 2014, through October 2, 2014.
The People conceded in their answer brief that the credible threat
convictions should have merged at sentencing because "the

6

prosecution did not separate the charges based on shorter time frames or specific incidents." Although we are not bound by the People's concession, *see People v. Knott*, 83 P.3d 1147, 1148 (Colo. App. 2003), we agree.

¶ 16    As noted, in their supplemental brief the People contend that the credible threat convictions should not merge with the serious emotional distress conviction. In support of that position, the People rely on *People v. Carey*, 198 P.3d 1223 (Colo. App. 2008), and *People v. Herron*, 251 P.3d 1190 (Colo. App. 2010). We consider the People's reliance on those cases misplaced.

¶ 17    In contrast to the People's contention, the division in *Carey* did not uphold multiple convictions under the credible threat and serious emotional distress subsections of the stalking statute; instead, as a careful reading of the division's opinion reveals, the defendant there was convicted of a single count of stalking, though he was apparently charged under both subsections of the statute. *See* 198 P.3d at 1227. Thus, the People's reliance on *Carey* is unavailing.

¶ 18    In *Herron*, the division concluded that two stalking convictions, one under the credible threat subsection and one

7

under the serious emotional distress subsection, *should* merge. 251 P.3d at 1192. The division determined, based on the plain language of section 18-3-602(1), that "the legislatively defined unit of prosecution for the crime of stalking is a continuous course of conduct by which one repeatedly follows, approaches, contacts, or places another under surveillance." *Id.* at 1193. Further, the division concluded that the stalking statute "does not contain any specific authorization for multiple punishments for each act of stalking," but instead "defines alternative means of committing a single offense." *Id.*; *see also People v. Abiodun*, 111 P.3d 462, 466 (Colo. 2005) (when the legislature joins "a number of acts . . . as a disjunctive series," rather than describing them in different provisions under different titles, it defines alternative means of committing a single offense); *People v. Friend*, 2014 COA 123M, ¶ 53, ___ P.3d ___, ___ (*cert. granted in part* Feb. 8, 2016). Thus, the *Herron* division merged the defendant's two stalking convictions under former section 18-9-111(4)(b)(I) (now codified at section 18-3-602(1)(a)) and former section 18-9-111(4)(b)(III) (now codified at section 18-3-602(1)(c)). 251 P.3d at 1192.

¶ 19    Still, in their supplemental brief, the People maintain that there is no multiplicity problem presented by Wagner's credible threat and serious emotional distress stalking convictions because, "unlike in *Herron,* Wagner committed enough factually distinct incidents to permit convictions on each theory." We disagree.

¶ 20    The People rely on the analysis in *Herron* that three instances of following the victim could not support the defendant's two stalking convictions because each stalking conviction must be based on repeated conduct. *See id.* at 1194. The People contend that Wagner's conduct, unlike the defendant's in *Herron,* could be separated into two distinct stalking convictions because he contacted the victim more than four times. However, because the stalking statute proscribes an entire course of conduct, "a second or successive offense is not necessarily committed by acts that are factually distinct from each other but only by acts that are factually distinct from the entire course of conduct punished by the first conviction." *Abiodun,* 111 P.3d at 470. Contrary to the People's argument, we determine that Wagner's conduct did not support factually separate stalking transactions.

9

¶ 21     While Wagner's course of conduct lasted for several months, the extended timeframe alone does not render his numerous contacts with the victim factually distinct. *See Herron*, 251 P.3d at 1194 (finding stalking transactions were not factually distinct despite passage of three months between them). Further, Wagner's contacts with the victim were related to a common theme — namely, his desire to reconcile and resume their relationship. Most significantly, the prosecution did not treat Wagner's acts as legally separable at trial. Instead, the prosecution based all three charges on the same evidence and designated the same approximately five-month period for each charge. During closing argument, the prosecutor urged the jury to "think about all of the threats and the conduct in connection with those threats in this case" and to consider Wagner's actions "taken in conjunction with everything." Accordingly, we conclude that the evidence supports only one conviction for stalking, and, therefore, two of his stalking convictions must be vacated.

¶ 22     We determine only that, in the circumstances here, the People did not prove factually distinct instances of conduct sufficient to support multiple stalking convictions. Nevertheless, we do not

conclude or even suggest that a defendant can never be convicted of multiple stalking convictions. *Cf. Woellhaf*, 105 P.3d at 218 ("[W]e do not suggest that the statute defines sexual assault on a child such that the prosecution may never charge separate offenses arising from a single course of conduct or criminal episode."). "The prosecution may pursue multiple convictions if the underlying evidence supports factually distinct offenses." *Id.*

¶ 23    In sum, we conclude that Wagner was charged with, and convicted of, multiplicitous counts. Further, we conclude that the error was plain. *Herron* was decided when Wagner was sentenced, as were *Woellhaf* and *Quintano*. *See Friend*, ¶ 74, ___ P.3d at ___. The protections against double jeopardy affect a substantial constitutional right. *Id.* at ¶ 75, ___ P.3d at ___. It was plainly erroneous for the trial court to enter three stalking convictions.

¶ 24    Thus, we remand for the trial court to vacate two of the stalking counts and to correct the mittimus accordingly.

### III. Sufficiency of the Evidence

¶ 25    Wagner contends that insufficient evidence supported all three of his convictions. We disagree. Because we have concluded that all of Wagner's convictions should have merged, we need only

address the sufficiency of the evidence supporting his conviction under any one of the subsections of section 18-3-602(1). However, we will address his argument as to all three convictions.

## A. Additional Facts

¶ 26    The victim testified that Wagner began texting, calling, and following her after the two separated, but that the contact increased over the next few months until their divorce was finalized. She testified that Wagner repeatedly parked outside her home, once confronted her in the parking lot at her workplace, and followed her and her boyfriend to a park. Additionally, Wagner told the victim on a few occasions that if he could not have her then no one could and implied "that [she] had to come back to him or else." During one phone conversation, the victim believed she heard Wagner "pull[] the slide back on a gun . . . and [she] was really concerned that he was either going to shoot himself or come over and kill [her or her boyfriend]." Wagner also told the victim that he knew where she lived, as well as where her and her boyfriend's families resided.

¶ 27    As a result of Wagner's behavior, the victim testified that she did not feel safe or secure, was "always worried" that Wagner "was either going to hurt himself, [her], or [her boyfriend]," started to

12

carry a concealed firearm, altered her route to work and her schedule, and lost sleep because she was "pretty emotional." In addition, the victim's boyfriend testified that he purchased a security system for his home and also started to carry a concealed gun.

¶ 28     The defense moved for a judgment of acquittal on all charges. In a thorough bench ruling, the trial court denied that motion.

## B.  Standard of Review

¶ 29     In considering a challenge to the sufficiency of the evidence, we review the record de novo. *Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005). "When determining a challenge to the sufficiency of the evidence, an appellate court must consider whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the charged crime beyond a reasonable doubt." *Carey*, 198 P.3d at 1232.

## C.  Analysis

¶ 30     Wagner contends that there was insufficient evidence to support his stalking convictions. His argument is twofold. First, he contends that the evidence did not prove beyond a reasonable

doubt that his conduct would have caused a reasonable person to suffer serious emotional distress or that the victim actually suffered serious emotional distress. Second, he asserts that his actions did not constitute "credible threats" because they would not have caused "a reasonable person to be in fear for the person's safety or the safety of his or her immediate family or of someone with whom the person has or has had a continuing relationship." § 18-3-602(2)(b), C.R.S. 2017. We disagree with both contentions.

¶ 31    Taken in the light most favorable to the People, we conclude the evidence was sufficient to show both that Wagner's conduct would have caused a reasonable person serious emotional distress and that it caused the victim serious emotional distress. The victim testified that, as a result of Wagner's surveillance and frequent communications, she felt unsafe, lost sleep, changed her daily routine to evade Wagner, and started to carry a concealed weapon. This evidence was sufficient to allow the jury to find the objective and subjective serious emotional distress elements had been established. *See Carey*, 198 P.3d at 1233 (victim's testimony "that she was 'very fearful' and 'very distressed' because she realized that defendant could easily act on his threats" and that she "increased

14

her level of awareness of her surroundings" was sufficient evidence of serious emotional distress); *People v. Cross*, 114 P.3d 1, 6 (Colo. App. 2004) (sufficient evidence of serious emotional distress when victim testified that the defendant's behavior caused her to change her work schedule, feel nervous, and have trouble sleeping), *rev'd in part on other grounds*, 127 P.3d 71 (Colo. 2006); *People v. Sullivan*, 53 P.3d 1181, 1185 (Colo. App. 2002) (sufficient evidence of serious emotional distress when victim testified that she changed her routines, was afraid, felt she was constantly being watched, and had trouble sleeping).

¶ 32    Similarly, the evidence was sufficient for the jury to find that Wagner made credible threats. On several occasions, he told the victim something like, "If I can't have you, then no one can." The victim testified that, during one phone call, she heard Wagner pull the slide of a gun back. Wagner also told the victim that he knew where her family lived. Again, taking the evidence in the light most favorable to the People, we conclude that this evidence was sufficient for the jury to conclude that Wagner had made credible threats. *See People v. Chase*, 2013 COA 27, ¶¶ 53-54, ___ P.3d ___, ___ (concluding that several emails containing "implicit and explicit

15

threats" was sufficient evidence of credible threats when victim considered the emails serious and bought a gun as a result); *People v. Suazo*, 87 P.3d 124, 126 (Colo. App. 2003) (noting sufficient evidence of credible threat where the "defendant told the victim that he was going to kill her if she did not see him").

## IV. Unanimity Instruction and Prosecutorial Election

¶ 33    Wagner contends that the trial court erred in rejecting a defense-tendered unanimity jury instruction or, in the alternative, failing to require the prosecution to elect between the alleged credible threats. We perceive no error.

¶ 34    In light of our conclusion that all Wagner's stalking convictions should merge, it may seem that we do not need to consider this argument. In *Herron*, the division apparently declined to address a similar contention in light of its conclusion that the defendant's stalking convictions should merge. *See Herron*, 251 P.3d at 1192-93 ("Because we agree with [the defendant's] double jeopardy argument, we do not address his alternative contention that the court erred in failing to require the prosecution to specify what conduct comprised emotional distress stalking and credible

16

threat stalking or to give the jury a unanimity instruction concerning the stalking counts.").

¶ 35 However, we conclude that because of the large number of stalking incidents alleged under both the credible threat and serious emotional distress subsections of the stalking statute, we must address this contention regardless of our conclusion that Wagner's convictions should merge. The prosecution presented evidence of numerous occasions on which Wagner contacted and followed the victim, any number of which could have supported a stalking conviction. Thus, we must still address Wagner's argument that the jury should have been required to unanimously agree as to which acts in fact occurred.

## A. Additional Facts

¶ 36 During a conference on the jury instructions, the defense tendered an instruction that read, "In order to convict the defendant of the crime of stalking as set forth in [the elemental instructions], you must either unanimously agree that the defendant committed the same act or acts, or that the defendant committed all of the acts described." In the alternative, the defense requested that the prosecution elect which acts constituted credible threats with

regard to counts two and three because there were "a number of different statements, any one of which could" constitute a credible threat.

¶ 37    The trial court denied the defense's request, relying primarily on *Carey*, 198 P.3d 1223, and stating, "When a defendant is charged with crimes occurring in a single transaction, the [p]rosecution does not have to elect among the acts that constitute the crime, and the unanimity instruction need not be given."

## B.  Standard of Review

¶ 38    We review de novo whether the trial court was required to give a unanimity instruction.  *People v. Torres*, 224 P.3d 268, 278 (Colo. App. 2009).  We also review de novo whether "the prosecution's failure to elect the particular act on which it relies for conviction" denied a defendant due process of law.  *Quintano*, 105 P.3d at 592.

## C.  Applicable Law

¶ 39    An accused has the right to a jury trial, U.S. Const. amends. VI, XIV; Colo. Const. art. II, §§ 16, 25, and a unanimous jury verdict, § 16-10-108, C.R.S. 2017.  "The trial court is responsible for ensuring that the jury is properly instructed on the law and that a conviction on any count is the result of a unanimous verdict."

18

*People v. Rivera*, 56 P.3d 1155, 1160-61 (Colo. App. 2002).

Therefore, as a general rule,

> [w]hen evidence of many acts is presented, any one of which could constitute the offense charged, the trial court must take one of two actions to ensure jury unanimity: (1) require the prosecution to elect the transaction on which it relies for the conviction, or (2) if there is not evidence to differentiate between the acts and there is a reasonable likelihood that jurors may disagree on the act the defendant committed, instruct the jury that to convict it must agree unanimously that the defendant committed the same act or that the defendant committed all of the acts included within the period charged.

*People v. Greer*, 262 P.3d 920, 925 (Colo. App. 2011), *as modified on denial of reh'g* (Apr. 21, 2011).

¶ 40　However, that general rule is inapposite when there is no "reasonable likelihood that jurors may disagree on the act the defendant committed." *Rivera*, 56 P.3d at 1160; *see also Greer*, 262 P.3d at 925. Thus, a trial court errs in rejecting a request for prosecutorial election or in denying a unanimity instruction only "[i]f the record demonstrates that '[s]ome of the jurors may have decided to convict on one act, while others may have decided to convict on another' such that 'it is impossible to be reasonably

certain of the reliability of the judgment of conviction.'" *People v. Gookins*, 111 P.3d 525, 528 (Colo. App. 2004) (quoting *Woertman v. People*, 804 P.2d 188, 192 (Colo. 1991)).

### D. Analysis

¶ 41    Wagner contends that the trial court erred by rejecting the unanimity instruction or by failing to require the People to elect which acts were credible threats in support of counts two and three. We disagree.

¶ 42    During trial, the defense's theory of the case was that Wagner had committed harassment rather than stalking. In fact, the defense began its closing argument by stating that "no one was going to deny how many text messages [there were] and how much contact there was" between Wagner and the victim. As Wagner acknowledges in his reply brief, it was "undisputed" that he made repeated contact with the victim. The defense did not argue that Wagner did not commit any of the acts about which the victim or the other witnesses testified.

¶ 43    We conclude that this is a case in which the evidence "described repeated acts with respect to a single victim-witness, such that the jury would be likely to agree either that all of the acts

20

occurred or that none occurred." *Rivera*, 56 P.3d at 1160.

Accordingly, there is no "reasonable likelihood that the jury could have disagreed concerning the act or acts [Wagner] committed" and the prosecution therefore was not required to elect on which acts it was relying to prove that Wagner had made a credible threat. *See id.* Nor was the trial court required to give a unanimity instruction.[2] *See Carey*, 198 P.3d at 1236; *see also Melina v. People*, 161 P.3d 635, 639-40 (Colo. 2007). Thus, the trial court did not err in denying the defense's request for prosecutorial election or, in the alternative, for a unanimity instruction.

## V. Conclusion

¶ 44 Accordingly, we vacate two of the counts and remand for the trial court to merge the convictions under section 18-3-602(1)(a), (b), and (c), and to correct the mittimus. In all other respects, the judgment is affirmed.

JUDGE HARRIS and JUDGE ROTHENBERG concur.

---

[2] Although we conclude that the trial court was not required to give the jury a unanimity instruction under the circumstances here, a unanimity instruction may be appropriate in cases, such as stalking, in which the charged crime is composed of multiple distinct acts.