The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
January 8, 2026

## 2026COA1

**No. 23CA0338, *People v. Ramirez-Armas* — Crimes — Assault in the First Degree — Peace Officers, Firefighters, or Emergency Medical Services Providers; Constitutional Law — Eighth Amendment — Proportionality Review — Per Se Grave or Serious Offenses**

To determine whether a defendant's sentence is constitutionally disproportionate to the crime for which the defendant was convicted, a division of the court of appeals initially considers whether the crime is per se grave and serious. Although other divisions of this court have held that various forms of first degree assault are per se grave and serious, until today, no opinion has addressed whether a first degree assault on a peace officer is per se grave and serious. The division holds that it is.

Court of Appeals No. 23CA0338
City and County of Broomfield District Court No. 20CR380
Honorable Sharon Holbrook, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Angel De Jesus Ramirez-Armas,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART AND VACATED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE LIPINSKY
Taubman* and Berger*, JJ., concur

Announced January 8, 2026

Philip J. Weiser, Attorney General, Joshua J. Luna, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Law Office of Sean C. Thomson, LLC, Sean C. Thomson, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     To determine whether a defendant's sentence is constitutionally disproportionate to the crime for which the defendant was convicted, we initially consider whether the crime is per se grave and serious.  Although divisions of this court have held that various forms of first degree assault are per se grave and serious, until today, no opinion has addressed whether a first degree assault on a peace officer is per se grave and serious.  We hold that it is.

¶ 2     Angel De Jesus Ramirez-Armas appeals the judgment of conviction entered on a jury verdict finding him guilty of aggravated robbery, first degree assault, two counts of criminal attempt to commit manslaughter, first degree aggravated motor vehicle theft, and vehicular eluding.  He contends that the trial court abused its discretion by granting the prosecution's motion to amend the information to substitute first degree assault for the original charge of menacing; the court violated his rights under *Batson v. Kentucky*, 476 U.S. 79, 96-97 (1986), by permitting the prosecution to strike from the venire the only juror with a Hispanic surname; and his sentence for first degree assault is grossly disproportionate.  We disagree with these contentions.

¶ 3    But we agree with Ramirez-Armas's contention, which the People confess, that his vehicular eluding conviction must merge into his conviction for first degree aggravated motor vehicle theft. We therefore vacate his conviction for vehicular eluding but otherwise affirm.

## I.    Facts and Procedural History

¶ 4    Terry Jensen saw someone stealing his truck from his apartment complex's parking lot.  Jensen called 911 and attempted to stop the theft.  In response, the person behind the wheel of Jensen's truck attempted to run him over and showed him a gun.

¶ 5    Detective Random Pihlak and Sergeant Dale Hammell separately responded to Jensen's 911 call and engaged in a vehicle chase with the driver of the stolen truck.  At one point during the chase, the driver sped toward Sergeant Hammell in the opposite traffic lane.  The driver then swerved into Sergeant Hammell's lane at nearly seventy miles per hour.  Sergeant Hammell veered onto the shoulder to avoid a head-on crash and concluded that the driver must have made a similar effort to avoid a collision.

¶ 6    Detective Pihlak eventually performed a PIT maneuver, which caused the stolen vehicle to crash.  After the driver ran off,

2

Detective Pihlak and other officers pursued him to a nearby business and arrested him. The officers later determined that the suspect was Ramirez-Armas.

¶ 7 On November 16, 2020, the prosecution charged Ramirez-Armas with two counts of criminal attempt to commit first degree murder, one count of aggravated robbery, one count of menacing, one count of first degree aggravated motor vehicle theft, one count of vehicular eluding, and one count of possession of a weapon by a previous offender (POWPO).

¶ 8 On August 12, 2021, Ramirez-Armas pleaded not guilty to the charges of criminal attempt to commit first degree murder, aggravated robbery, menacing, first degree aggravated motor vehicle theft, and vehicular eluding. He later pleaded guilty to the POWPO charge, which is not the subject of this appeal.

¶ 9 A year before trial, the prosecution moved to amend the information to substitute first degree assault, a class 3 felony, for menacing, a class 5 felony. Ramirez-Armas's counsel objected because Ramirez-Armas had previously pleaded not guilty. The court granted the motion after finding that the amendment would not prejudice Ramirez-Armas.

¶ 10    The trial proceeded with jury selection.  The prosecution used one of its peremptory challenges to strike Juror S.M.  Defense counsel challenged the strike under *Batson* on the ground that S.M. was the "only one with a Spanish surname."  After the prosecution offered a race-neutral explanation for the strike, the court denied the *Batson* challenge.  The court then offered defense counsel two opportunities to make a further record in support of her *Batson* argument before it dismissed the excused jurors from the courtroom.

¶ 11    At the conclusion of the trial, the jury convicted Ramirez-Armas of aggravated robbery, first degree assault, two counts of criminal attempt to commit manslaughter, first degree aggravated motor vehicle theft, and vehicular eluding.  The court sentenced him to thirty-two years in the custody of the Department of Corrections for aggravated robbery and twenty-three years for first degree assault, to be served consecutively, and six-year concurrent sentences for each count of attempted manslaughter, first degree aggravated motor vehicle theft, and vehicular eluding.

## II. Analysis

### A. The Trial Court Did Not Abuse Its Discretion by Granting the Motion to Amend

¶ 12 Ramirez-Armas argues the court abused its discretion by granting the prosecution's motion to amend the information to substitute a charge of first degree assault for the original menacing charge after he pleaded not guilty. We disagree.

#### 1. Additional Facts

¶ 13 At the October 2021 hearing on the motion to amend, the prosecutor explained that the proposed new first degree assault charge was "not based on new information. It is a modification that we think is the more appropriate charge for that offense."

¶ 14 The lawyer who represented Ramirez-Armas at the hearing (a substitute for his regular lawyer, who did not attend the hearing due to a scheduling conflict) objected, arguing that the "case ha[d] been pending for almost a year [and] . . . Ramirez-Armas made significant decisions . . . that might be affected by this modification."

¶ 15 The court granted the motion, saying, "[I]t doesn't seem timely, but pursuant to case law the [court] does find it is timely

filed. . . . The [c]ourt does find good cause shown to grant that motion to amend, not finding prejudice to the defense." But the court said it would allow Ramirez-Armas's regular lawyer twenty-one days to supplement the substitute lawyer's argument. Nothing in the record shows that Ramirez-Armas's regular lawyer presented a further argument in opposition to the motion.

¶ 16 The court set Ramirez-Armas's trial for January 24, 2022, three months after it granted the motion to amend. The trial did not begin until October 31, 2022, however, for reasons irrelevant to this appeal.

## 2. Standard of Review

¶ 17 "We review a trial court's decision to allow the prosecution to amend an information for an abuse of discretion." *Fisher v. People*, 2020 CO 70, ¶ 13, 471 P.3d 1082, 1086.

¶ 18 "A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when the trial court misapplies or misconstrues the law." *Id.* Under this standard, "we ask not whether we would have reached a different result but, rather, whether the trial court's decision fell within the range of reasonable options." *People v. Archer*, 2022 COA 71, ¶ 23,

518 P.3d 1143, 1149-50 (quoting *Hall v. Moreno*, 2012 CO 14, ¶ 54, 270 P.3d 961, 973).

¶ 19     In addition, we review courts' interpretations of the rules of criminal procedure de novo, using the interpretive rules that apply to statutory construction. *People v. Valles*, 2025 COA 67, ¶ 9, 576 P.3d 740, 743. In construing a statute, we look first to its language, "giving its words and phrases their plain and ordinary meanings." *McCoy v. People*, 2019 CO 44, ¶ 37, 442 P.3d 379, 389. "We read statutory words and phrases in context, and we construe them according to the rules of grammar and common usage." *Id.*

### 3.     Substantive Law

¶ 20     An information "provides the defendant with notice of the offense charged, as well as the factual circumstances surrounding the offense . . . and protects the defendant from further prosecution for the same offense." *Fisher*, ¶ 14, 471 P.3d at 1086 (quoting *People v. Williams*, 984 P.2d 56, 60 (Colo. 1999)). Under Crim. P. 7(e),

> [t]he court may permit an information to be amended as to form or substance *at any time prior to trial*; the court may permit it to be amended as to form at any time before the verdict or finding if no additional or different

> offense is charged and if substantial rights of
> the defendant are not prejudiced.

(Emphasis added.)

¶ 21     "Crim. P. 7(e) is to be construed liberally to avoid the dismissal of cases for technical irregularities in an information that can be cured through amendment." *People v. Walker*, 321 P.3d 528, 543 (Colo. App. 2011), *aff'd in part and vacated in part*, 2014 CO 6, 318 P.3d 479. Although Crim. P. 7(e) narrows a court's discretion to permit amendment of an information after the trial begins, "it is within the discretion of the trial court to allow the information to be amended as to form or substance any time prior to trial." *People v. Thomas*, 832 P.2d 990, 992 (Colo. App. 1991). Thus, Crim. P. 7(e)'s reference to prejudice only applies to motions to amend an information filed between the start of trial and "the verdict or finding."

### 4.     The Court Did Not Abuse Its Discretion by Granting the Motion to Amend

¶ 22     Ramirez-Armas contends that the court abused its discretion because he was prejudiced when the court granted the motion to amend after he had entered a not guilty plea, and because the prosecution did not "provide any explanation . . . much

8

less . . . good cause" for the amendment. He argues that he decided to reject a plea offer and to proceed to trial "based upon a set of charges which was then drastically changed not long after he entered his not guilty plea." We are not persuaded.

¶ 23　　There is no legal support for Ramirez-Armas's argument, which, when taken to its logical conclusion, would preclude courts from granting motions to amend an information any time after a defendant rejected a plea offer. Ramirez-Armas in effect asks us to rewrite the first independent clause of Crim. P. 7(e) to insert a time limit for substantive pretrial amendments to an information and a requirement that the court find no prejudice. However, he does not point to any legal authority supporting the addition of these restrictions to the first clause of Crim. P. 7(e). To the contrary, we "cannot rewrite statutory or administrative rules under the guise of interpretation." *People v. Hamm*, 2019 COA 90, ¶ 35, 461 P.3d 559, 565 (quoting *Winter v. Indus. Claim Appeals Off.*, 2013 COA 126, ¶ 27, 321 P.3d 609, 614). Rather, Ramirez-Armas cites a case involving amendment of an information after the trial began. *See People v. Washam*, 2018 CO 19, ¶ 17, 413 P.3d 1261, 1265.

*Washam* does not apply to cases, such as this, in which the court permitted amendment of the information before trial.

¶ 24   The plain language of the rule does not require the court to find good cause or lack of prejudice to the defendant before granting a motion to amend before trial. *See* Crim. P. 7(e). Nonetheless, the court may, in its discretion, consider those factors when deciding whether to allow the amendment. *See Thomas*, 832 P.2d at 992 (concluding that the trial court did not abuse its discretion by granting a motion to amend an information when it considered, among other factors, prejudice to the defendant). The court ruled after making findings that the prosecution had established good cause to amend the information and that the amendment would not prejudice Ramirez-Armas. It also granted Ramriez-Armas's lawyer an opportunity to supplement her prejudice argument, but she never did so. Because the court made findings to explain its decision to allow the amendment, even though such findings were not required, the court did not act arbitrarily or unfairly by allowing the prosecution to amend the information.

¶ 25   For these reasons, we conclude that the court did not abuse its discretion by granting the motion to amend.

10

## B.  The Court Did Not Err by Denying
## Ramirez-Armas's *Batson* Challenge

¶ 26    Ramirez-Armas contends that, for three reasons, the court erred by denying his counsel's *Batson* challenge to the prosecutor's exercise of a peremptory challenge to strike Juror S.M.  First, he contends that the court did not provide his counsel with a sufficient opportunity to rebut the prosecutor's race-neutral explanation for the strike.  Second, he contends that the court deprived him of a meaningful remedy if it found a *Batson* violation because the court allowed S.M. to leave the courtroom before defense counsel completed her *Batson* argument.  Third, he asserts that the court violated his constitutional right to equal protection by making "compound errors" in applying *Batson*, and that we must remand the case for further findings under step three of the *Batson* analysis.

## 1.  Additional Facts

¶ 27    S.M. was the last of the initial venire members to be questioned during voir dire.  The court allowed each side two and a half minutes to question him.

¶ 28    Rather than ask S.M. questions, the prosecutor told him to

"pick [his] topic."

> THE JUROR: I have been thinking about it a little bit, but, like, I can see where people are coming from, like having relationships with family members, something like that, like military background, cops.  But, I mean, considering like how things are nowadays, it is kind of like you can't really like — I find it hard to take a certain side, which I am not like taking a side.
>
> [THE PROSECUTOR]: Do you have a strong feeling about law enforcement, police officers, one way or the other?
>
> THE JUROR: Well, like I said, there is like — considering how things are nowadays, it is like there is good, slash, bad people on both sides. You can run into a certain situation where like a cop that — I don't want to bring it up, but I think you know what I mean, like there is bad people on both sides.
>
> . . . .
>
> [THE PROSECUTOR]: Do you have any experience in your own life, or close friends or family that you believe would impact your ability to serve as a juror in this case?
>
> THE JUROR: Not exactly.  But I do have a relative that was like sort of . . . accused for something that they didn't really do.  So like I guess he was considered like an acquaintance [sic], I guess, because she ended up helping the wrong person without knowing it, and she

got the consequences for it, even though it wasn't —

[THE PROSECUTOR]: Was he charged with anything for that?

THE JUROR: They were charged for — I think they counted it as a felony. I think. I am not sure exactly. Like afterwards, it has been like extremely hard for them to find jobs, stuff like that.

¶ 29 After the prosecutor's time to question S.M. expired, the court asked him follow-up questions:

THE COURT: Anything about that experience that makes you feel — before you have heard any evidence, that you are bias[ed] for either side or against either side?

THE JUROR: Not really. Split in the middle. I do have like my disagreements between like how like including like people that are doing the wrong thing. I don't have a certain spot I am on, if that makes sense.

. . . .

THE COURT: I ask people to follow the law as opposed to their own personal beliefs. That is what I am asking from you. It is fine no matter what your answer is. There is no right or wrong answer. It is just can you follow the law that I give you?

THE JUROR: Yeah, of course.

¶ 30    In response, defense counsel only asked S.M. two questions during her allotted two and a half minutes:

> [DEFENSE COUNSEL]: And, [S.M.], so would you be able to listen to a police officer's testimony just the same as you would any other witness as well?
>
> THE JUROR: Of course.
>
> [DEFENSE COUNSEL]: Okay.  And would you . . . also be able to listen to them as any other lay witness?
>
> THE JUROR: Yes.
>
> [DEFENSE COUNSEL]: No further questions.

¶ 31    The court told the lawyers to proceed with their peremptory challenges after it instructed the venire, "You don't get to leave because there is one last legal argument that might be made.  I need to make sure I keep you here if that argument is made."

¶ 32    After the prosecutor used her fourth peremptory challenge to strike S.M., defense counsel asked to approach the bench.  The court responded that defense counsel could "make all objections afterwards."

¶ 33    After the lawyers exercised their peremptory challenges, the court allowed them to approach for argument.  The court said to defense counsel, "I am assuming this is a *Batson* [challenge] as to

14

[S.M.]. Make your argument as to a prima facie showing this was discrimination on account of race."

¶ 34 Defense counsel noted that S.M. was the "only one with a Spanish surname." She reminded the court that S.M. said "he would be able to listen to both sides, there are good and bad people on both sides, and also that he would be able to listen to a police officer's testimony the same as [that of] any other witness."

¶ 35 The prosecutor responded,

> [S.M.] was telling me he had a friend or cousin who was accused of something he didn't do, talking about the fact it was a felony charge, caused a lot of problems for them. I intended to get into with him how that experience with his family would impact his testimony today, was not able to[,] given the time. But given his experience with someone who he believes was not guilty, and perhaps unfairly treated, I have concerns about him as a juror.

¶ 36 The court found that the "defense has not met their burden to show this is discriminatory in nature" and said it "does not find that the race[-]neutral explanation given by [the prosecutor was] incorrect." In addition, the court said that it shared the prosecutor's concerns, "especially when [S.M.] went into the information regarding punishment. . . . I specifically said [the

15

jurors] were not to consider any punishment, that that could not affect their decision at all, and he brought up consequences of a felony . . . ."

¶ 37 After making this statement, the court asked defense counsel whether she "ha[d] any other record." Defense counsel reiterated that Ramirez-Armas's right to a jury of his peers would "not be accomplished at this time" because the prosecutor struck "the only person with a Spanish surname." She did not otherwise attempt to rebut the prosecutor's race-neutral explanation for striking S.M.

¶ 38 The court then said, "I will now excuse the jurors *unless there is further record*." (Emphasis added.) Defense counsel responded, "No further record." The court then excused the members of the venire, including S.M., who had not been selected to serve on the jury.

### 2. Standard of Review

¶ 39 We review a court's *Batson* analysis "de novo . . . at step one (regarding whether the objecting party made a prima facie showing that the challenged peremptory strike was race-based) and at step two (regarding whether the striking party gave a race-neutral reason for the strike)." *People v. Romero*, 2024 CO 62, ¶ 45, 555 P.3d 582,

595. "But at step three, we review a trial court's ultimate conclusion, regarding 'whether the objecting party proved purposeful discrimination by a preponderance of the evidence for clear error.'" *Id.* (quoting *People v. Johnson*, 2024 CO 35, ¶ 21, 549 P.3d 985, 991).

¶ 40 "Whether the objecting party has met the burden of proof at step three is a finding of fact . . . ." *Id.* at ¶ 47, 555 P.3d at 596. "Under the clear error standard of review, an appellate court will set aside a trial court's findings of fact only if they are unsupported by the record." *Id.*

¶ 41 We defer to a court's step three determination "so long as the record (1) reflects that the trial court considered all the relevant circumstances and (2) supports (including possibly through implicit demeanor and credibility findings) the trial court's ruling as to whether the objecting party proved purposeful racial discrimination by a preponderance of the evidence." *Id.* We will only reverse a judgment of conviction based on a trial court's *Batson* error if "the error affects the substantial rights of the parties," meaning it "substantially influenced the verdict or affected the fairness of the trial proceedings." *Clark v. People*, 2024 CO 55, ¶ 61, 553 P.3d

17

215, 229 (quoting *Hagos v. People*, 2012 CO 63, ¶ 12, 288 P.3d 116, 119).

### 3. The Court Afforded Ramirez-Armas's Lawyer a Sufficient Opportunity to Rebut the Prosecutor's Race-Neutral Explanation for Striking S.M.

¶ 42 Ramirez-Armas argues that, before a court rules on whether the objecting party established purposeful racial discrimination under step three of *Batson*, it must provide the objecting party with "an opportunity to rebut the prosecution's proffered explanation" and that the court erred by denying his lawyer such an opportunity.

¶ 43 Although we disagree with the court's decision to defer defense counsel's rebuttal until after the court announced it was denying the *Batson* challenge, any error in the sequence of events neither substantially influenced the verdict nor affected the fairness of the trial proceedings. The court provided Ramirez-Armas's lawyer with a sufficient opportunity to rebut the prosecutor's race-neutral explanation for striking S.M., albeit after the court said it was denying the *Batson* challenge. *See People v. Madrid*, 2023 CO 12, ¶ 34, 526 P.3d 185, 193 ("During step three, the defendant may rebut the prosecution's race-neutral explanations.").

¶ 44    After the prosecutor offered her race-neutral explanation and the court gave its reasons for denying Ramirez-Armas's *Batson* challenge, the court asked defense counsel whether she "ha[d] any other record." Instead of rebutting the prosecutor's race-neutral explanation, however, defense counsel merely reiterated her prima facie step one argument. In addition, defense counsel did not argue that the court had deprived her of a sufficient opportunity to rebut the prosecutor's step two reason for striking S.M. After Ramirez-Armas's lawyer finished making her record, the court *again* asked whether "there [was] further record." Defense counsel said, "No further record."

¶ 45    This colloquy undercuts Ramirez-Armas's argument that the court did not allow his counsel "to meaningfully pursue the *Batson* challenge." Although the court should have allowed defense counsel to present her rebuttal *Batson* argument before the court announced its "ultimate conclusion" at step three, on these facts, any error was harmless under the applicable standard. As noted above, even though the court provided defense counsel with *two* *opportunities* to rebut the prosecutor's race-neutral reason for striking S.M., Ramirez-Armas's lawyer neither attempted to rebut

the prosecutor's stated reason nor asserted that the court had not provided her with a sufficient opportunity to present a rebuttal. And nothing in the record suggests that the court would not have changed its ruling on the *Batson* challenge if defense counsel had presented a persuasive rebuttal.

¶ 46 Accordingly, we hold that the court provided Ramirez-Armas's lawyer with a sufficient opportunity to rebut the prosecutor's step two assertion that she struck S.M. for race-neutral reasons.

#### 4. The Court Did Not Prematurely Release S.M. or Improperly Delay Defense Counsel's *Batson* Argument

¶ 47 Ramirez-Armas further argues that the court could not have provided his lawyer with a meaningful remedy if it found a *Batson* violation because S.M. was no longer available to be reseated by the time defense counsel completed her *Batson* argument. Ramirez-Armas asserts that, by prematurely dismissing S.M. from service, the court denied defense counsel "the opportunity to timely make an objection prior to S.M.'s departure." The record does not support Ramirez-Armas's argument, however.

¶ 48 Remedying a *Batson* violation is not possible "when the judge has released the prospective juror who was the subject of the

*Batson* challenge *before* the issue is brought to the judge's attention." *People v. Valera-Castillo*, 2021 COA 91, ¶ 12, 497 P.3d 24, 31. Although "peremptorily struck jurors may be excused from the jury box," it is "critical that they not be released from jury service or allowed to leave the courtroom until all the peremptory strikes are exercised because reseating is the only effective way to protect the equal protection rights of all parties involved." *Id.* The court adhered to this rule by instructing the members of the venire who had been excused to remain in the courtroom until the lawyers completed their "legal argument[s]."

¶ 49 Thus, contrary to Ramirez-Armas's assertion, the court directed S.M. to remain in the courtroom until defense counsel said she had "[n]o further record" to make in support of her *Batson* challenge. Thus, we reject Ramirez-Armas's argument that the court prematurely dismissed S.M. and, therefore, could not provide Ramirez-Armas with a meaningful remedy if it determined that the prosecutor improperly struck S.M. based on his Hispanic surname.

¶ 50 For these reasons, we also disagree with Ramirez-Armas's assertion that the court violated his right to equal protection by "arbitrarily delay[ing] the defense['s] opportunity to challenge the

21

prosecution's dismissal of S.M." As noted above, the brief delay in defense counsel's argument could not have caused prejudice to Ramirez-Armas because S.M. remained in the courtroom the entire time. Thus, there was nothing arbitrary in the court's decision regarding the timing of defense counsel's *Batson* argument.

¶ 51 Accordingly, we conclude that the court did not err by briefly deferring defense counsel's *Batson* argument.

### 5. The Court Did Not Make Compound Errors Under *Batson*

¶ 52 Finally, we reject Ramirez-Armas's argument that the court made "compound" *Batson* errors that resulted in a violation of his right to equal protection.

¶ 53 The court did not make any errors, much less make "compound errors," in rejecting defense counsel's *Batson* challenge. Accordingly, we reject Ramirez-Armas's request that, based on alleged "compound errors," we remand the case to the court for further findings under step three of the *Batson* analysis.

## C. Ramirez-Armas's Conviction for Vehicular Eluding Must Merge into His Conviction for First Degree Aggravated Motor Vehicle Theft

¶ 54    Ramirez-Armas contends — and the People agree — that the court erred by not merging his conviction for vehicular eluding into his conviction for first degree aggravated motor vehicle theft because vehicular eluding is an element of aggravated motor vehicle theft. We also agree.

### 1. Standard of Review

¶ 55    Even when the prosecution confesses error, "we have an independent obligation to review the record and reach a just conclusion under the facts and the law." *People v. Vasquez*, 2022 COA 100, ¶ 61, 521 P.3d 1042, 1055. We review merger claims de novo. *People v. Serna-Lopez*, 2023 COA 21, ¶ 14, 531 P.3d 410, 414.

### 2. Substantive Law

¶ 56    "Unless a statute expressly authorizes multiple punishments for the same criminal offense, the Double Jeopardy Clauses of the United States and Colorado Constitutions prohibit 'the imposition of multiple punishments for the same criminal conduct.'" *People v. Wagner*, 2018 COA 68, ¶ 11, 434 P.3d 731, 736 (quoting *Woellhaf v.*

*People*, 105 P.3d 209, 214 (Colo. 2005)). "Accordingly, the merger doctrine precludes a defendant's conviction of both a greater and lesser included offense." *People v. Sauser*, 2020 COA 174, ¶ 110, 490 P.3d 1018, 1038; *see* § 18-1-408(1)(a), C.R.S. 2025.

¶ 57    "We apply a strict elements test to determine whether one offense is a lesser included offense of another." *Sauser*, ¶ 111, 490 P.3d at 1038. "Under this test, we compare the elements of the two criminal statutes . . . ." *Id.* (quoting *Reyna-Abarca v. People*, 2017 CO 15, ¶ 53, 390 P.3d 816, 824). "[A]n offense is a lesser included offense of another offense if the elements of the lesser offense are a subset of the elements of the greater offense, such that the lesser offense contains only elements that are also included in the elements of the greater offense." *Id.* (quoting *Reyna-Abarca*, ¶ 3, 390 P.3d at 818).

### 3. The Jury Instructions Identified Vehicular Eluding as an Element of Aggravated Motor Vehicle Theft

¶ 58    The court's aggravated motor vehicle theft jury instruction contained six elements:

> 1. That the defendant,
>
> 2. in the state of Colorado, at or about the date and place charged,

24

> 3. knowingly,
>
> 4. obtained or exercised control over the motor vehicle of another,
>
> 5. without authorization, or by threat or deception, and
>
> 6. *used the motor vehicle in the commission of the crime of Vehicular Eluding.*

(Emphasis added.) *See* § 18-4-409(2), C.R.S. 2025 (specifying the elements of first degree motor vehicle theft).

¶ 59　　Thus, to find Ramirez-Armas guilty of aggravated motor vehicle theft, the jury had to find, among other elements, that he committed the crime of vehicular eluding. Accordingly, the elements of vehicular eluding were also elements of aggravated motor vehicular theft. *See id.*

¶ 60　　For this reason, we hold that Ramirez-Armas's conviction for vehicular eluding must merge into his conviction for aggravated motor vehicle theft, and we vacate his conviction for vehicular eluding. Because the sentence imposed on the vacated count was concurrent with the other imposed sentences, no modification of the aggregate sentence is required.

### D. Ramirez-Armas's Sentence for First Degree Assault Is Not Constitutionally Disproportionate

¶ 61    Ramirez-Armas contends that his twenty-three-year sentence for first degree assault under section 18-3-202(1)(e), C.R.S. 2025, is constitutionally disproportionate. Section 18-3-202(1) specifies eight ways that a person can commit first degree assault. First degree assault on a peace officer is described in subsection (1)(e):

> With intent to cause serious bodily injury upon the person of a peace officer, . . . he or she threatens with a deadly weapon a peace officer . . . engaged in the performance of his or her duties, and the offender knows or reasonably should know that the victim is a peace officer . . . acting in the performance of his or her duties . . . .

§ 18-3-202(1)(e). (The statute also refers to firefighters and emergency medical service providers. *Id.* Our references to peace officers when discussing the statute are not intended to exclude these other categories of first responders.)

¶ 62    Ramirez-Armas argues that we must consider both prongs of the abbreviated proportionality review, as described further below, because first degree assault under subsection (1)(e) is not a per se grave and serious offense. He also argues that we should consider

26

the original charge of menacing in weighing the harshness of his sentence. We disagree with these arguments.

### 1. Standard of Review

¶ 63 We review de novo the legal question of "[w]hether a sentence is grossly disproportionate in violation of the Eighth Amendment to the U.S. Constitution and article II, section 20 of the Colorado Constitution." *Wells-Yates v. People*, 2019 CO 90M, ¶ 35, 454 P.3d 191, 204.

### 2. The Law Governing Proportionate Review of Sentences

¶ 64 The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. The United States Supreme Court has construed this clause as prohibiting "not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Solem v. Helm*, 463 U.S. 277, 284 (1983). The Supreme Court later clarified that "[t]he Eighth Amendment does not require strict proportionality between crime and sentence" but only forbids "extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in the judgment) (quoting *Solem*, 463 U.S. at 288). (Although a majority of

the Court did not join Justice Kennedy's concurrence, the Colorado Supreme Court adopted it "because it resolved the case on the narrowest grounds and obtained the support of the largest number of justices" in the "fractured" *Harmelin* decision. *Wells-Yates*, ¶ 5 n.3, 454 P.3d at 196 n.3.) "It is 'exceedingly rare' for a sentence to be deemed so extreme that it is grossly disproportionate to the crime." *Id.* at ¶ 5, 454 P.3d at 196 (quoting *Harmelin*, 501 U.S. at 1001 (Kennedy, J., concurring in part and concurring in the judgment)).

¶ 65    Because article II, section 20, of the Colorado Constitution is identical to the Eighth Amendment, the Colorado Supreme Court has "generally embraced the Supreme Court's approach to proportionality challenges." *Id.* at ¶ 10, 454 P.3d at 197. A proportionality review measures the relationship between the nature and number of offenses committed and the severity of the punishment imposed. *People v. Gee*, 2015 COA 151, ¶ 57, 371 P.3d 714, 724. But the Colorado Supreme Court does not strictly follow the United States Supreme Court's approach to analyzing proportionality. *Wells-Yates*, ¶ 10, 454 P.3d at 197.

### 3. We Can Skip the First Prong of the Abbreviated Proportionality Review Because First Degree Assault on a Peace Officer Is Per Se Grave and Serious

#### a. Elements of an Abbreviated Proportionality Review

¶ 66　Colorado courts take an objective, two-step approach to determine whether a sentence is grossly disproportionate. *Id.* at ¶ 7, 454 P.3d at 196. The first step involves an "abbreviated proportionality review." *Id.* at ¶¶ 7, 10, 454 P.3d at 196-97; *People v. Sellers*, 2022 COA 102, ¶ 58, 521 P.3d 1066, 1079. That step consists of two prongs: "The trial court should consider (1) the gravity or seriousness of the offense and (2) the harshness of the penalty." *Wells-Yates*, ¶ 7, 454 P.3d at 197.

¶ 67　Under the first prong, we initially consider whether the defendant's offense has been "designated per se grave or serious." *Sellers*, ¶ 59, 521 P.3d at 1079. "If a crime, 'based on [its] statutory elements, necessarily involve[s] grave or serious conduct' in all factual scenarios, it's designated as per se grave or serious . . . ." *People v. Kennedy*, 2025 CO 63, ¶ 16, ___ P.3d ___, ___ (quoting *Wells-Yates*, ¶ 63, 454 P.3d at 209). If the crime is deemed per se grave and serious, the court may skip the first prong of the abbreviated proportionality review and move straight to the second

prong. *Sellers*, ¶ 59, 521 P.3d at 1079; *see Gee*, ¶ 59, 371 P.3d at 724. As noted above, the second prong of the abbreviated proportionality review requires examination of the harshness of the penalty. *Sellers*, ¶ 59, 521 P.3d at 1079.

¶ 68 During the second step of the proportionality analysis — extended proportionality review — "the trial court may compare the challenged sentence to sentences for other crimes in the same jurisdiction and sentences for the same crime in other jurisdictions." *Wells-Yates*, ¶ 7, 454 P.3d at 197. But the court only conducts an extended proportionality review if the abbreviated proportionality review "leads to an inference of gross disproportionality." *Id.* (quoting *Harmelin*, 501 U.S. at 1005 (Kennedy, J., concurring in part and concurring in the judgment)). "[T]he purpose of any comparative analysis of sentences in [the extended proportionality review] 'is to validate an initial judgment' in [the abbreviated proportionality review] 'that a sentence is grossly disproportionate to a crime.'" *Id.* (quoting *Harmelin*, 501 U.S. at 1005 (Kennedy, J., concurring in part and concurring in the judgment)).

¶ 69    In conducting our proportionality review, we acknowledge that the supreme court "encouraged caution before labeling a crime as per se grave or serious" because the "the label eliminates a longstanding layer of due process for criminal defendants." *Kennedy*, ¶ 17, ___ P.3d at ___.  Nonetheless, the per se grave and serious per se designation is proper if under "no set of circumstances" would "the conduct *and* culpability" of a person convicted of the offense be less than grave and serious.  *Id.* at ¶ 18, ___ P.3d at ___ (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

### b.    First Degree Assault Under Subsection (1)(e) Is Per Se Grave and Serious

¶ 70    No reported Colorado case has specifically considered whether first degree assault under subsection (1)(e) of section 18-3-202 is a per se grave and serious offense.  Divisions of this court have held that first degree assault under section (1)(a) of the statute — assault with a deadly weapon — is per se grave and serious.  *See Gee*, ¶¶ 13, 60, 371 P.3d at 718, 724; *People v. Oldright*, 2017 COA 91, ¶¶ 2, 5-6, 20, 457 P.3d 638, 641, 644; *see also People v. Lopez*, 2025 COA 73, ¶ 14, ___ P.3d ___, ___ (concluding that *Gee* remains

31

good law after *Wells-Yates*, which called into question prior designations of some per se grave and serious offenses). Further, in *People v. Duran*, 2025 COA 34, ¶ 33, 569 P.3d 899, 907, the division held that extreme indifference first degree assault under section 18-3-202(1)(c) "is a per se grave or serious offense under the standard announced in *Wells-Yates*."

¶ 71 In both *Gee* and *Oldright*, the divisions said generally that first degree assault is per se grave and serious. *See Gee*, ¶ 60, 371 P.3d at 724 ("Because, by its nature, first degree assault involves violence or the potential for violence, we hold that it is a per se grave or serious offense."); *Oldright*, ¶ 6, 457 P.3d at 641 ("We agree with the trial court that first degree assault is a grave and serious offense.").

¶ 72 Ramirez-Armas does not point to any case disagreeing with the broad language of *Gee* and *Oldright* or otherwise holding that first degree assault under any subsection of section 18-3-202(1) is not a per se grave or serious offense. Instead, Ramirez-Armas challenges the statement in *Gee* that "first degree assault necessarily involves violence or the potential for violence" because, he says, "[n]ot all crimes which involve violence or the potential for violence are per se

32

grave and serious." We disagree with Ramirez-Armas's argument that we should hold that a first degree assault under subsection (1)(e) is less grave and serious a crime than a first degree assault under other subsections of the statute.

¶ 73    Ramirez-Armas argues that "[i]t is not clear whether all subtypes of [f]irst [d]egree [a]ssault qualify as per se 'grave and serious' crimes." But we need not reach this broad proposition. As relevant to this case, Ramirez-Armas does not argue or provide legal authority to support his contention that we should place a conviction under subsection (1)(e) in a different category from convictions under the types of first degree assault that divisions of this court held are per se grave and serious. Instead, he analogizes first degree assault on a peace officer to menacing, with which he was originally charged. Ramirez-Armas argues that menacing is "a crime which involves the potential for violence" but "[e]ven so, [it] is not a per se 'grave and serious' crime."

¶ 74    But unlike menacing, the General Assembly placed subsection (1)(e) in the first degree assault statute. By doing so the General Assembly clearly intended that a conviction under subsection (1)(e) is just as serious as a conviction under any other type of first

degree assault listed in 18-3-202(1) — including the types that divisions of this court previously designated as per se grave and serious. Moreover, the General Assembly imposed identical penalties for all first degree assaults under 18-3-202(1) — any violation of the statute not involving "a sudden heat of passion" is a class three felony. *See* §§ 18-3-202(2)(a) & (b).

¶ 75    We would ignore the General Assembly's determination of the gravity and seriousness of first degree assault on a peace officer under subsection (1)(e) if we were to hold that a violation of the subsection is less serious a crime than the violations of subsections (1)(a) and (1)(c) analyzed in *Gee* and *Oldright*. *See People v. Prante*, 493 P.2d 1083, 1086 (Colo. 1972) (noting that because "peace officers are placed in a position of great risk and responsibility in enforcing laws, preventing crime and the myriad of other tasks they are called upon to perform," the General Assembly's invocation of "a special punishment for an assault upon a peace officer acting in the scope of his official duties is neither arbitrary, capricious nor unreasonable").

¶ 76    Our determination that first degree assault under subsection (1)(e) is a per se grave and serious offense is consistent

34

with the supreme court's decision in *Kennedy*. In that case, the supreme court concluded that vehicular homicide is not a per se grave and serious offense because it lacks a mens rea element. *Kennedy*, ¶ 20, ___ P.3d at ___. "When a crime requires no proof of mens rea, it is impossible to evaluate the culpability of defendants convicted of the offense under every factual scenario." *Id.* at ¶ 22, ___ P.3d at ___.

¶ 77 In contrast, a conviction for first degree assault on a peace officer requires proof of mens rea — "intent to cause serious bodily injury upon the person of a peace officer." *See* § 18-3-202(1)(e). Thus, we can "evaluate the culpability" of the defendant "under every factual scenario" resulting in a conviction under subsection (1)(e). *Kennedy*, ¶ 22, ___ P.3d at ___.

¶ 78 For these reasons, we hold that a violation of subsection (1)(e), like a violation of subsection (1)(a) and (1)(c), is a per se grave and serious offense. Thus, we need not separately consider the gravity or seriousness of Ramirez-Armas's act of aiming a speeding truck directly at Sergeant Hammell. *See Sellers*, ¶ 59, 521 P.3d at 1079.

#### 4. Ramirez-Armas's Sentence for First Degree Assault Was Not Unduly Harsh

¶ 79    Given our conclusion that first degree assault under subsection (1)(e) is a per se grave and serious offense, we move to the second prong of the abbreviated proportionality analysis — whether Ramirez-Armas's sentence for that offense was unduly harsh. *See id.*

¶ 80    First degree assault is a crime of violence under the mandatory sentencing statute. § 18-1.3-406(2)(a)(II)(C), C.R.S. 2025. That statute says that "[a]ny person convicted of a crime of violence shall be sentenced . . . for a term of incarceration of at least the midpoint in, but not more than twice the maximum of, the presumptive range." § 18-1.3-406(1)(a). "This 'spectrum' of sentencing effectuates an important legislative intention" of maximizing each defendant's chance for a fair and individual sentence based on the specific circumstances of the defendant's conviction. *Lopez v. People*, 113 P.3d 713, 725 (Colo. 2005).

¶ 81    In addition, first degree assault not committed "upon a sudden heat of passion" is a class 3 felony and a crime of violence with a sentencing range of ten to thirty-two years. §§ 18-3-202(2)(a) & (b);

§ 18-1.3-401(1)(a)(V.5)(A), 10(a), (b)(XII), C.R.S. 2025;

§ 18-1.3-406(2)(a)(I), (II)(C), C.R.S. 2025. Ramirez-Armas's

twenty-three-year sentence therefore falls within the statutory

range. We accord "great deference" to the General Assembly's

determination of the penalty for first degree assault. *Wells-Yates*,

¶ 62, 454 P.3d at 209.

¶ 82 Ramirez-Armas argues that, when considering the harshness

of his sentence, we must also consider that he was originally

charged with menacing and not focus on the substituted charge of

first degree assault. But as explained above, the prosecution

properly amended the information to substitute first degree assault

for felony menacing. And Ramirez-Armas was convicted of first

degree assault, not felony menacing.

¶ 83 "It makes no sense to evaluate the harshness of the penalty for

a particular offense by treating that offense as something it is not."

*Duran*, ¶ 32, 569 P.3d at 907 (rejecting the defendant's argument

that the proportionality analysis should focus on vehicular

homicide instead of extreme indifference first degree assault, the

offense of which he was convicted, because his conduct was "more

consistent" with the former offense). For this reason, we evaluate

the harshness of Ramirez-Armas's sentence through the lens of first degree assault and not the lens of the originally charged offense of menacing. *See id.*

¶ 84 As noted above, the evidence at trial showed that Ramirez-Armas sped toward Sergeant Hammell's vehicle. Sergeant Hammell testified that he had to "jump[] on the brake" and "jerk[] the car to the right" onto the shoulder to avoid a collision and that he assumed Ramirez-Armas also tried to avoid a crash. That the last-minute maneuvers avoided a head-on crash does not lessen the seriousness of driving nearly seventy miles per hour directly toward a police vehicle.

¶ 85 Accordingly, we hold that Ramirez-Armas's sentence for first degree assault is not constitutionally disproportionate.

### III. Disposition

¶ 86 We affirm the judgment of conviction except for Ramirez-Armas's vehicular eluding conviction. We vacate that conviction and remand to the trial court for correction of the mittimus, consistent with this opinion.

JUDGE TAUBMAN and JUDGE BERGER concur.